STATE OF NORTH CAROLINA v. JOHN RAYMOND DOZIER

No. 73

(Filed 20 January 1971)

1. **Criminal Law § 15— objection to the venue of the offense — time of ob-
jection**

    Defendant's objection that the State failed to establish the county
    or venue in which the alleged offense took place will not be considered
    on appeal when the objection was made only after the defendant entered
    a plea of not guilty.

2. **Criminal Law § 15— venue of offense — presumption**

    An offense is deemed to have been committed in the county alleged
    in the indictment.

3. **Criminal Law § 15— objection to the venue of offense — time of ob-
jection**

    A defendant who questions the venue of the offense must designate
    the proper county before the jury is empaneled.

4. **Criminal Law § 135; Rape § 7— rape prosecution — absolute discretion
of jury to determine guilt and punishment**

    The Supreme Court upholds the procedure in this State which per-
    mits the trial jury in a rape prosecution to decide, within its absolute
    and uncontrolled discretion, the guilt of the defendant and at the
    same time and as a part of the verdict to fix his punishment at life
    imprisonment.

5. **Criminal Law § 76— admissibility of incriminating statements — suffi-
ciency of findings on voir dire**

    Defendant's incriminating admissions to investigating officers sub-
    sequent to his arrest for rape were properly admitted in evidence, where

State v. Dozier

there were detailed findings of fact, fully supported by the evidence, that defendant's admissions were freely and voluntarily made.

APPEAL by defendant from *Fountain, J.,* June 22, 1970 Session, ONSLOW Superior Court.

The defendant, John Raymond Dozier, was first arrested on magistrates' warrants, waived preliminary hearing and was held for grand jury action. Thereafter the grand jury at the December 1969 Session returned indictments, proper in form, charging (1) the kidnapping of Shannon Elaine Canady, and (2) the rape of Shannon Elaine Canady. The offenses were alleged to have occurred in Onslow County on September 3, 1969.

The defendant, John Raymond Dozier, represented by counsel of his own selection, before pleading to the indictments, moved for a change of venue because of the unfavorable publicity in Onslow County. By consent of counsel for both parties, the court ordered a venire of 100 jurors drawn from the box in Craven County. Likewise before pleading to the indictments, the defendant moved to quash the indictment charging rape upon these grounds: (1) a death sentence for rape is cruel and unusual punishment forbidden by the Eigthth and Fourteenth Amendments to the Constitution of the United States; (2) the North Carolina Statute (G.S. 14-21) would subject the defendant to a trial by jury with absolute discretion, uncontrolled by any standards, to impose a death sentence in violation of the defendant's rights under the Fourteenth Amendment to the Constitution of the United States and Article 1, Section 17, of the North Carolina Constitution; (3) the verdict procedure in capital cases under North Carolina law which permits one jury to determine both guilt and punishment violates the defendant's right under the Fifth Amendment to the Constitution of the United States; (4) both indictments were returned by a grand jury from which members of the defendant's race and economic class were systematically excluded in violation of the defendant's Fourteenth Amendment rights.

"The court heard evidence on defendant's motion to quash and thereafter denied defendant's motion as to each ground alleged in the motion. To the denial of the motion, the defendant objected and excepted.

EXCEPTION NO. 1"

The defendant was duly arraigned and entered pleas of not guilty. The court ascertained the charges involved one continuous episode; and without objection consolidated the indictments for purpose of trial. The trial jury was selected from the veniremen drawn from the jury box in Craven County. Neither party objected to any member of the trial panel.

The State's evidence discloses that Shannon Elaine Canady, an unmarried female twenty-one years of age, on and prior to September 2, 1969 was employed as a telephone operator in Jacksonville, Onslow County. Effective at the end of that day she was being transferred to New Bern in Craven County. The cities of Jacksonville and New Bern are connected by Highway 17, which passes through Jones County. Shannon Elaine Canady testified as a witness for the State. Her testimony is here summarized except when quoted.

Before going to work on the afternoon of September 2, 1969, she placed her clothing and some of her apartment furnishings in her DeSoto automobile intending to take them to New Bern. However, she had planned to spend the night with a relative in Maysville about halfway between Jacksonville and New Bern. She completed her last day's work about midnight and started alone on her way to Maysville. About five miles out of Jacksonville the automobile did not appear to be operating properly. She pulled to the side of the road in a lighted area in front of a motel, but examination failed to disclose any defect in the vehicle. As she re-entered the highway, an automobile with bright lights approached from the rear. Its front bumper was almost in contact with her rear bumper. She speeded up but the automobile passed her and slowed down. She passed and the following vehicle again passed. She became frightened, speeded up but the automobile kept closely behind. At one time as the race continued their speed exceeded one hundred miles per hour. The following vehicle finally came in contact with the side of her DeSoto, pushing it partially off the road. Her engine cut off and she was unable to start it. The following car had stopped first alongside, then pulled up in front. " . . . (T)wo colored men . . . got out of their car . . . came back to mine and tried to get in the door . . . they opened the hood and yanked the horn wire out so I couldn't blow the horn . . . . (O)ne of them came to the driver's door . . . and tried to kick the glass out. I was

sitting up in the seat and I had a broken mop handle that I was trying to keep them away with . . . . (T)hey both pulled me out and I was fighting and I was scratching and screaming . . . they picked me up. They told me that if I didn't shut up and cooperate that they were going to kill me."

The two men, later identified as John Raymond Dozier and Jesse High, forced Miss Canady to enter their automobile, take off all her clothes and each, while the other drove, forced her to have intercourse with him on two different occasions. They continued to drive for some time. Being short of gas, they began looking for a filling station. Before they stopped at a filling station, they forced Miss Canady to enter the trunk of the vehicle. After leaving the station they permitted her to get out of the trunk. Soon thereafter, they forced her to lie down in the ditch while they drove out of sight. Miss Canady then made her way to the nearby farm home of Odell Thomas. She reported to Mr. and Mrs. Thomas what had happened to her, called her parents and notified the officers.

Odell Thomas testified that about 3:15 on the morning of September 3, 1969 he heard a call for help at his door. He and his wife admitted Miss Canady. "She was crying and really hollering a little bit. She was really upset." Officers were called and Miss Canady taken to Craven County Hospital where Dr. Rodler made an examination, finding fresh blood and lacerations of "the vaginal entrance."

Robert Newman testified that on the morning of September 3, 1969 about 3 a.m. John Raymond Dozier and Jesse High drove up to his filling station and bought gas. They were driving a blue Pontiac. While the witness was pumping gas, Jesse High left his seat in the vehicle and sat on the car trunk.

Highway Patrolman Gregory found the DeSoto on Highway 17 on the Onslow side of the Jones County line. The lights were bright, the key was in the switch, but the engine would not ignite. Marks on the left side near the door indicated the vehicle had been in contact with some object. Miss Canady's pocketbook was lying on the front floorboard. A broken mop handle was near the front seat.

Mr. Ward, a fellow Marine, was the owner of the Pontiac. He testified that on the night of September 2, 1969 he permitted defendant Dozier and Jesse High, who were members of the

Marine Corps, to drive his Pontiac automobile. The vehicle was returned during the night. It had just a small dent on the right rear. "John Dozier told me he had a small accident."

The State undertook to offer in evidence incriminating admissions allegedly made by the defendant on September 3rd after his arrest by the Marine Corps authorities. Upon objection, the court excused the jury and conducted a *voir dire* at which the State's evidence disclosed incriminating admissions were made voluntarily after all required warnings were given. The defendant signed a written waiver of rights which was offered in evidence on the *voir dire*. The defendant did not testify; however, he called "as an adverse witness" one of the officers present at the time the warnings were given and the incriminating admissions were made at the Provost Marshal's office at the Marine Corps base. The adverse witness testified that during the time the interrogations of the defendant were underway, one of the investigating officers made notes, but after the defendant examined them he refused to sign. The officer was asked about the defendant's lack of sleep and lack of food. The officer's replies were negative and failed to disclose any lack of warning or lack of voluntariness or lack of defendant's understanding at the time he made the admissions.

The court made full findings of fact and concluded the admissions were freely and voluntarily made and were properly admissible in evidence. The court permitted the admissions to be relayed to the jury. These admissions followed closely Miss Canady's story as to the happenings between the time the defendant and High drove up behind her DeSoto as she re-entered the highway and the time they permitted her to leave their Pontiac near New Bern.

At the conclusion of the State's evidence, the court overruled motions for directed verdicts. The defendant testified in his own behalf. He denied or did not remember making any incriminating statements to the officers. He testified that after the race, Miss Canady voluntarily permitted him to carry her in his arms to the Pontiac, voluntarily undressed and permitted both him and High to have intercourse with her on two occasions. He further testified she voluntarily consented for them to seal her up in the trunk of the Pontiac, and later, voluntarily left their automobile at a place on the highway near New Bern at about 3 o'clock in the morning.

He further testified he had been up all night on September 2-3 and had had very little sleep before midnight at the time of his interrogation on September 3rd.

At the conclusion of all the evidence, the defendant renewed and the court overruled motions for directed verdicts of not guilty.

After the arguments and the charges of the court (not made a part of the record) the jury returned these verdicts. "Guilty of kidnapping and guilty of rape with a recommendation that his punishment be life imprisonment." The jurors were polled and verified the verdicts. The court imposed these judgments: "In each case the punishment of the court is that the defendant be confined in the State's prison for his natural life." The defendant gave notice of appeal.

Upon a finding of indigency, the court appointed Mr. Ferguson trial attorney to perfect the appeal.

*Chambers, Stein, Ferguson & Lanning by James E. Ferguson II and Charles Becton for the defendant appellant.*

*Robert Morgan, Attorney General, William W. Melvin, Assistant Attorney General, T. Buie Costen, Assistant Attorney General for the State.*

HIGGINS, Justice.

The capable and experienced counsel who represented the defendant in the trial and now represents him on this appeal argues the convictions of his client should be reversed on three grounds: (1) the State failed to establish the county or venue in which the alleged offenses took place; (2) the trial court committed error in overruling the defendant's pleas in abatement and motions to quash the indictments upon these grounds, (a) the trial jury in capital cases is given absolute, uncontrolled and standardless discretion to decide between death and life imprisonment, (b) the same jury is required to determine the issues of guilt and of punishment; and (3) the defendant conditionally contends if the convictions are not reversed for the reasons assigned, the defendant is entitled to a new trial because of the court's error in permitting the State to introduce the defendant's incriminating admissions made to the investigating officers subsequent to his arrest.

**[1]** It must be inferred from the record that the defendant's objection to the trial on the ground the evidence failed to show the county in which the offenses occurred was not made until after the plea of not guilty was entered. The motion appears in the record after the conclusion of the evidence, the argument of counsel, the charge of the court, and the return of the verdicts.

The indictments were returned by the grand jury in Onslow County. The incidents described in the evidence had their origin in Onslow County and continued on Highway 17 through Jones County and into Craven County. Miss Canady was kidnapped and transported by the defendant and his companion on Highway 17 beginning in Onslow, through Jones and into Craven where she was permitted to escape from their automobile about 3 o'clock on the morning of September 3rd.

**[2]** According to Miss Canady's story, and according to the defendant's confession, she was forced into their automobile, kept many hours during which four acts of rape were committed against her before she was released. If the defendant desired to question Onslow County as the proper venue, he should have raised the objection before plea and as part of the plea he should have designated the proper venue. (G.S. 15-134) "Indeed, the offense, if proven, 'shall be deemed and taken' as having been committed in the county laid in the charge, unless the defendant, by plea in abatement, under oath, shall allege the transaction took place in another county, whereupon the case may be removed thither for trial." *State v. Allen,* 107 N.C. 805, 11 S.E. 2d 1016. "An offense is deemed to have been committed in the county in which it is laid in the indictment unless the defendant shall deny the same by plea in abatement, which ordinarily must be filed not later than the arraignment." *State v. Ray,* 209 N.C. 772, 184 S.E. 836; *State v. Holder,* 133 N.C. 709, 45 S.E. 862; *State v. McKeon,* 223 N.C. 404, 26 S.E. 2d 914; *State v. Overman* 269 N.C. 453, 153 S.E. 2d 44.

**[3]** If a defendant questions the venue, he must designate the proper county before the jury is empaneled. This is so because after that important event, jeopardy has attacked and by keeping quiet on a matter in which he has superior knowledge, he could escape conviction and punishment altogether. The defendant did not challenge the venue at a time when he was entitled to be heard. The defendant's first assignment of error is not sustained.

[4] This court has repeatedly upheld the procedure which permits the trial jury in a capital case to decide guilt and at the same time and as a part of the verdict fix the punishment at life imprisonment. *State v. Peele,* 274 N.C. 106, 161 S.E. 2d 568; *State v. Atkinson,* 275 N.C. 288, 167 S.E. 2d 241; *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885; *State v. Roseboro,* 276 N.C. 185, 171 S.E. 2d 886. Failure to set up standards to govern the jury in the exercise of its discretion to reduce the punishment from death to life imprisonment is by no means prejudicial to the prisoner. Standards would tend to restrict the exercise of discretion. Without standards, the jury is left free to fix life imprisonment for any reason satisfactory to the jury. "A statute mitigating capital punishment is not essentially unfair to the wrongdoer for failure to specify standards for the exercise of that discretion." *In re Anderson,* 447 P. 2d, 117 (Cal.). The motion to quash and the plea in abatement were properly overruled.

[5] Although the defendant did not testify on the *voir dire* which Judge Fountain carefully conducted in the absence of the jury, he did call for "adverse examination" Mr. W. C. Jarman, investigating officer in the Onslow County sheriff's office. Mr. Jarman testified the Miranda warnings were given and the defendant signed a written consent to the interrogation which was conducted in the office of the Camp Lejeune Provost Marshal and at a time when the defendant was in the custody of Marine Corps authorities and before his release to the Onslow County sheriff. The witness testified the interrogation began about 11 p.m. on September 3, 1969 and continued "for about an hour or a little over." Further investigation occurred the following morning. Mr. Jarman testified the defendant was alert, sober and stated he was willing to tell the truth and gave a story of events which closely followed and corroborated the evidence Miss Canady gave before the jury. At the conclusion of the hearing Judge Fountain made detailed findings of fact which were fully supported by the evidence, ruled the defendant's admissions were freely and voluntarily made, and admitted them in evidence before the jury.

The defendant did not testify on the *voir dire;* nevertheless, he did testify before the jury after the State had concluded its evidence. He argues the reviewing court must determine from the entire record whether incriminating admissions were voluntary, citing *State v. Fox,* 274 N.C. 277, 163 S.E. 2d 492. However,

in Fox the new trial was awarded upon the ground that incriminating admissions were made by the defendant after inducements were offered by the officers which tainted them as involuntary. In this case the defendant offered nothing on the *voir dire* which tended to impeach his admissions. His testimony before the jury failed utterly to disclose any facts or permit any findings that his statements in the Provost Marshal's office were other than knowingly, voluntarily and responsibly made. If we assume the defendant had a right to remain silent on the *voir dire,* permit the court to pass on the voluntariness of his confession and admitted in evidence and by his later testimony again challenge admissibility, even so the later testimony falls far short of impeaching the confession. In passing on his claim that his admissions were involuntary, it should be noted that he was a high school graduate, he had spent one year in college and four years in the Marines. It is worthy of note also that the defendant did not include in the record and permit this court to see Judge Fountain's charge. We have a right to assume therefore, that his Honor omitted nothing from the charge which would have helped the defendant. The decisions of this court fully sustain the findings that the defendant's admissions were voluntary and were properly admissible in evidence. *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344; *State v. Outing,* 255 N.C. 468, 121 S.E. 2d 847; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *State v. Fuqua,* 269 N.C. 223, 152 S.E. 2d 68. The defendant abandoned his challenge to the indictments on the ground the grand jury was improperly constituted.

A careful review of the record fails to disclose any error in the trial.

No error.