STATE OF NORTH CAROLINA v. MARSHALL SMITH

No. 74

(Filed 29 January 1971)

1. **Criminal Law § 135; Homicide § 31— first-degree murder case — jury may decide both guilt and punishment**

   Defendant's motion to quash a first-degree murder indictment on the ground that the jury in a capital case is required to decide both guilt and punishment, *held* properly denied by the trial court. G.S. 14-17.

2. **Criminal Law § 76— homicide case — slaying of housewife — admissibility of confession — conflicting evidence**

   Defendant's confession that was made to investigating officers subsequent to his arrest for the pistol slaying of a housewife during a robbery, including his statement that the killing was "an accident," was properly admitted in evidence when the trial court made findings of fact upon conflicting evidence that the confession and the statement were freely and voluntarily made.

3. **Criminal Law §175— findings of fact — conclusiveness on appeal**

   The findings of fact of the trial judge are conclusive on appeal if supported by the evidence.

APPEAL by defendant from *McKinnon, J.,* June 22, 1970 Criminal Session, CUMBERLAND Superior Court.

In this criminal prosecution the defendant, Marshall Smith, was indicted for the first degree murder of Caroline A. Flores. The indictment, proper in form, cites December 9, 1969, as the date on which the offense occurred.

On December 30, 1969, the court, finding the defendant to be indigent, appointed Larry A. Thompson attorney to represent him. Attorney Thompson filed a verified petition alleging the defendant, Marshall Smith, age twenty-four years, was under two indictments and was confined in jail on charges of housebreaking and larceny and murder. The petition alleged that because of his service in Viet Nam ". . . (T)here is a distinct possibility that the Defendant is mentally incompetent to answer the charges against him," and requested the court to commit him to the State Hospital for examination, as provided in G.S. 122-91. At the conclusion of the examination period, the defendant was returned to Cumberland County for trial.

At the arraignment the defendant moved for a change of venue. The motion was denied. He then moved to quash the

indictment on three grounds: (1) On the charge of first degree murder, G.S. 14-17 requires the same jury to pass on the issue of guilt or innocence; and if guilt is found, to determine whether the punishment should be death or life imprisonment. (2) The defendant was not given a preliminary hearing. (3) The defendant was not given a speedy trial. At the hearing, defense counsel admitted that the defendant had not requested the case be placed on the trial calendar. The court concluded there had been no prejudicial delay in the defendant's trial.

The defendant's counsel ascertained from the solicitor that, as a part of the State's case, the prosecutor intended to offer in evidence defendant's in-custody confession. Thereupon the defendant made a motion to suppress the confession on the ground it was not free and voluntary. The court conducted a painstaking *voir dire* at which Officer Washburn testified the required warnings were given prior to the beginning of the interrogation, that the defendant, having been given the Miranda Warnings, consented to the interrogation without counsel and that he freely and voluntarily disclosed to the officers the manner in which he shot and killed Mrs. Flores in the attempt to rob her.

The defendant said he was on his way home from the grocery store about 8:30 on the night of December 9, 1969. He saw a light in Apartment 4 at 315 Johnson Street and walked up to the door and knocked. " . . . (A) young Caucasian girl answered the door. He told her that he had been walking for a long time and was thirsty and wanted a drink of water, . . . he opened the screen door and stepped in and she returned with the glass of water and he drank it." She placed the empty glass on the kitchen table. " . . . (T)hat he turned around and pulled his automatic from his belt and told her he wanted all of her money. He said that she told him that, 'Don't hurt me; I will give you the money.' . . . (S)he went into a rear bedroom, where she took a billfold out of the right top dresser drawer. That she took the money out of the billfold and handed it to him, and when she jerked her hand back the gun went off, and he stated that he just went all to pieces and he just emptied the gun, just kept firing, and she fell to the floor." The defendant told the officers he was high on marijuana.

The warnings given and the admissions were reduced to writing, submitted to the defendant who made minor correc-

tions, initialed each page and signed at the end. He voluntarily appeared before a justice of the peace and made oath that the warnings were given and that his admissions were true. Other officers, including the justice of the peace, gave testimony corroborating Officer Washburn.

The defendant testified, denying that warnings were given or that he waived his right to counsel. He testified he was assaulted by the officers and forced to sign the prepared confession. His wife testified the defendant demanded a lawyer at the time of his arrest. At the conclusion of the inquiry the court, finding the confession was freely and voluntarily made, overruled the motion to suppresss.

The following is a summary of the evidence developed at the trial before the jury. On and prior to December 9, 1969, the defendant, Marshall Smith, a sergeant in the Army, lived with his wife in a duplex apartment at 617 Johnson Street near Fort Bragg, Cumberland County. Roy Hamby, also a soldier, lived in an adjoining apartment. Roy Hamby testified that he owned and kept a twenty-two Browning automatic pistol in the nightstand beside his bed. The magazine contained four live rounds. On December 11, 1969, Hamby discovered his pistol and a camera were missing. He reported the loss to the police whose investigation caused them to suspect the defendant, Marshall Smith. The camera was found in a pawn shop where a friend of the defendant had pawned it for him. The friend so testified. The twenty-two Browning automatic pistol was discovered near the defendant's apartment. Sergeant Hamby, the owner, identified the weapon by its serial number.

As the officers were investigating the defendant as a suspect in the breaking and entering charge, the dead body of Caroline A. Flores was discovered in her apartment. The autopsy showed that she died as a result of four gunshot wounds. Two twenty-two caliber bullets were recovered from her body. Four fired cases were found near the body. A ballistics expert testified that his examination disclosed that one of the bullets removed from the body and the empty cases found nearby had been fired from the twenty-two Browning automatic pistol. The other bullet taken from the body was too badly mutilated to permit the witness to express a similar opinion.

During the interrogation of the defendant with reference to the theft of Hamby's pistol, Deputy Sheriff Washburn testified, after having given the necessary warning as to his rights: "I advised him that we had found the twenty-two Browning automatic pistol. I told him that the pistol was sent to the laboratory. . . . My information was that this was the gun that had killed the deceased. At that time he blurted out '(I)t was an accident.' " Deputy Sheriff Washburn again advised the defendant he need not make any admissions and when the defendant indicated his desire to admit his connection with the death of Mrs. Flores, Deputy Washburn called in the other officers, who also testified on the *voir dire*.

When further questioned, the defendant gave the officers a detailed statement concerning the shooting. One of the officers reduced to writing the defendant's story which the defendant checked, made some minor corrections, then signed. He went before a justice of the peace, acknowledged the statement and made oath that the statement was true and correct and that he executed it freely and voluntarily.

Before offering the defendant's confession before the jury, the State offered evidence that on and prior to December 9, 1969, Caroline A. Flores and her husband, Miguel Flores, a soldier, lived in an apartment on Johnson Street near Fort Bragg. During that week he had been absent on field maneuvers. On December 11, 1969, he returned home and found his wife's dead body on the floor of the bedroom. The post mortem disclosed that death was caused by four gun shot wounds.

The court, over objection, permitted Officer Washburn to repeat to the jury the admissions made by the defendant. Evidence was offered that the defendant's fingerprints were discovered on a water glass on the kitchen table in the Flores home.

After the State concluded its evidence, the court denied the defendant's motion for a verdict of not guilty. The defendant did not offer evidence before the jury. After the argument and the court's charge, the jury found the defendant guilty of murder in the first degree and fixed his punishment as imprisonment for life in the State's Prison. After denying the defendant's motion to set the verdict aside, the court imposed

the mandatory sentence of life imprisonment. The defendant appealed.

*Downing, Downing & David by Harold D. Downing for the defendant appellant.*

*Robert Morgan, Attorney General Millard R. Rich, Jr., Assistant Attorney General, Andrew A. Vanore, Jr., Assistant Attorney General for the State.*

HIGGINS, Justice.

On this appeal the defendant argues the trial court committed two prejudicial errors: (1) The court should have sustained his motion to quash the indictment and should have dismissed the action because of defects in the North Carolina Capital Felony Statute under which the indictment was drawn; and, conditionally, (2) If his motion to quash be not allowed, then he is entitled to a new trial because of the court's error in permitting the State to introduce his confession in evidence. These two questions alone were discussed and hence all other objections are abandoned.

[1]　As ground for his motion to quash the indictment charging murder in the first degree, the defendant argues G.S. 14-17 requires the trial jury to pass on both guilt and punishment, thereby placing upon him the impermissible burden of deciding whether to testify in mitigation of punishment and thereby take the risk of being required to give evidence against himself on the issue of guilt, or to forego all right to testify.

In the event the court should fail to sustain his motion to quash the indictment, then he should be awarded a new trial on the ground his confession was involuntary and was erroneously admitted in evidence.

Motions to quash indictments charging capital felonies based on the grounds here alleged have been before this Court many times. Without exception, the Court has denied them. "This Court has repeatedly upheld the procedure which permits the trial jury in a capital case to decide guilt and at the same time and as a part of the verdict fix the punishment at life imprisonment." *State v. Dozier,* 277 N.C. 615, 178 S.E. 2d 412. See also *State v. Roseboro,* 276 N.C. 185, 171 S.E. 2d 886, *State v. Hill,* 276 N.C. 1, 170 S.E. 2d 885, *State v. Atkinson,* 275 N.C.

288, 167 S.E. 2d 241, *Jackson v. Denno,* 378 U.S. 368, 12 L. Ed. 908, 84 S.Ct. 1774, *Spencer v. Texas,* 385 U.S. 554, 17 L. Ed. 2d 606, 87 S.Ct. 648. We adhere to our former decisions and hold the trial court correctly denied the motion to quash.

[2] The trial court conducted a full hearing before overruling the defendant's motion to suppress his confession. The most that may be said for the defendant is that the evidence on the *voir dire* was conflicting. True the defendant testified that proper warnings were not given him and that his request for a lawyer prior to and during his interrogation was denied. He testified he was assaulted by the officers and threatened if he did not confess. His wife corroborates his story that he had demanded the right to see a lawyer at the time of his arrest.

On the other hand, officers testified the required warnings were given. The defendant, when told the murder weapon had been discovered, "Blurted out, 'it was an accident.'" After Officer Washburn had testified, repeating the substance of the confession, defense counsel sought by cross-examination to impeach him. As corroboration, the State introduced the written documents which the defendant verified before the justice of the peace.

[3] At the conclusion of the hearing it became the duty of the trial judge to weigh the evidence on the *voir dire,* find the facts, and based on the findings, to determine whether the admissions were free, voluntary and understandingly made. Where the evidence is conflicting (as here), the judge must resolve the conflict. He sees the witnesses, observes their demeanor as they testify and by reason of his more favorable position, he is given the responsibility of discovering the truth. The appellate court is much less favored because it sees only a cold, written record. Hence the findings of the trial judge are, and properly should be, conclusive on appeal if they are supported by the evidence. *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344, *State v. Moore,* 275 N.C. 141, 166 S.E. 2d 53, *State v. Wright,* 275 N.C. 242, 166 S.E. 2d 681. In this case the physical evidence gives sturdy support to the verity of the defendant's confession. When the murder weapon was stolen it contained four live rounds of ammunition. Mrs. Flores was shot four times. The defendant told the officer when he shot Mrs. Flores the first time she fell and screamed and he kept shooting. He made the statement that he went into the house and asked for a

drink of water. Mrs. Flores went to the kitchen, got a glass of water and gave it to him. He drank the water and returned the glass to her and she placed it on the kitchen table. The officers found the water glass on the kitchen table in the Flores home. Examination by the fingerprint expert disclosed the defendant's fingerprints on that glass.

The evidence made out a strong case of murder in the first degree (a killing in the perpetration of a robbery). Careful review fails to disclose any error of law in the trial.

No error.