STATE OF NORTH CAROLINA v. JAMES JUNIOR BIGGS

No. 43

(Filed 6 April 1976)

**1. Homicide § 21— first degree murder — sufficiency of evidence**
    Testimony by an eyewitness, an SBI agent who related defendant's own account of the manner of killing the victim and his reasons for killing her, and a pathologist who described the stab wounds in the victim's heart and abdomen was sufficent to establish an unlawful

killing done with premeditation, deliberation, and actual malice, and thus to sustain a verdict of murder in the first degree.

**2. Criminal Law § 75— in-custody statements — waiver of counsel — necessity for express finding**

The trial court in a homicide case erred in the admission of defendant's in-custody inculpatory statements without an express finding that defendant had knowingly and intelligently waived his right to counsel before making the statements where the *voir dire* evidence concerning defendant's waiver of counsel was conflicting.

APPEAL by defendant under G.S. 7A-27(a) from *Webb, J.*, 25 August 1975 Session of CHOWAN Superior Court.

Defendant was tried upon a bill of indictment charging him with the first degree murder of Doris Jean Ferebee on 12 July 1975. The State's evidence, consisting primarily of the testimony of deceased's 11-year-old daughter, Antionette, an eyewitness to the killing, and of the investigating officers to whom defendant made inculpatory statements, tended to show the facts summarized below.

Prior to 12 July 1975 defendant and the deceased, Doris Jean Ferebee, had known one another intimately for sometime. On 11 July 1975, Mrs. Ferebee swore out a warrant against defendant, charging that he had assaulted her. Defendant was arrested upon this warrant at approximately 7:30 p.m. that day and detained until he was released on bond between 8:00 and 8:30 p.m.

About 1:00 a.m. on 12 July 1975 defendant went to Mrs. Ferebee's home, where she lived with her five children whose ages ranged from 5 to 14 years. Antionette testified that when he arrived defendant tapped on one of the front windows and called to the deceased. Receiving no reply he broke the front door and entered the children's bedroom carrying an open pocketknife in his hand. He asked each child in turn where his mother was and all answered that they did not know. Defendant told them he was going to give them five minutes to find their mother. He instructed them to tell her he would not hurt her if she came downstairs, that he only wanted to talk with her. The children went upstairs, found their mother hiding under a bed, told her what defendant had said, and went back downstairs.

Mrs. Ferebee, holding a butcher knife and fire poker in her hand, came to the top of the stairs. Seeing defendant stand-

ing at the bottom of the stairs she walked slowly down the steps toward him. When she was about halfway down, defendant pushed her the rest of the way. He then showed her a copy of the warrant she had sworn out against him. "They talked loud about it" and ultimately defendant, the deceased, and her children all went into the kitchen.

Once in the kitchen Mrs. Ferebee placed the butcher knife and the fire poker on a table. Defendant then went over to her, grabbed her arm, and "pushed her into the pocketknife" he had continuously held in his hand. Defendant asked the children if they wanted to see their mother when he was finished with her. They all responded "No," and he pushed Mrs. Ferebee into the living room. In a few moments defendant called the children to come in "and look at her one more time." When the children entered they saw their mother lying on the floor beside the couch moaning. Defendant then left and the children ran next door for help. As the last two were leaving, Mrs. Ferebee struggled to her feet.

At approximately 1:30 a.m. Deputy Sheriff Glenn Perry was notified that Mrs. Ferebee had been stabbed in her home on Paradise Road. He immediately drove to the Ferebee home, where he was later joined by Sheriff Troy Toppin and SBI Agent William Godley. The officers searched the residence but could not find Mrs. Ferebee. In consequence of information given him by her children, Sheriff Toppin directed Deputy Perry to find defendant and question him with reference to Mrs. Ferebee's whereabouts.

When Deputy Perry arrived at the home of defendant's father, where defendant lived, he was invited in by the father. Perry informed defendant that Mrs. Ferebee had been hurt and asked him whether he had been to her house that night. At this point the court conducted a *voir dire* to determine the admissibility of defendant's statements to Deputy Perry en route to the home of deceased. After hearing the testimony of Deputy Sheriff Perry and the defendant the court found that the statements were volunteered and were not in response to custodial interrogation and were admissible in evidence. (Defendant does not assign the admission of these statements as error.)

Deputy Perry testified that, in response to his question, defendant told him he had been to Mrs. Ferebee's house that night at 1:30 a.m.; that he then told defendant he had a report

that she had been hurt, that the officers could not find her and he asked him "if he would mind" going with him to help find her. When defendant said that he would go, the deputy asked him if he had a knife. He said Yes and, upon the officer's request, defendant gave him the pocketknife he had on his person.

En route to Mrs. Ferebee's house Deputy Perry asked defendant no questions. Defendant, however, asked the deputy, "Mr. Perry, do you mean to tell me that she is not in the house?" When the deputy said No, defendant replied, "I don't see how the bitch could go anywhere the way she was hurt." Defendant made no further statement at that time and the deputy did not interrogate him. In his opinion, defendant was perfectly sober.

When the two men arrived at the Ferebee home, Deputy Perry informed the Sheriff what defendant had told him. At that point the Sheriff placed defendant under arrest, "[r]ead him his rights," and questioned him.

A *voir dire* was conducted to determine the admissibility of defendant's further statements. The evidence for the State tended to show that Sheriff Toppin correctly informed defendant of his constitutional rights in accordance with the *Miranda* decision and that defendant freely and voluntarily waived those rights, including his right to have counsel present. Defendant, testifying on *voir dire,* stated that the Sheriff did not inform him of his right to have an attorney appointed for him, never asked him whether he wanted an attorney present during questioning, and that he (defendant) never indicated he did not desire counsel. On this conflicting evidence the trial judge concluded that defendant's statements to Sheriff Toppin were admissible. (His findings will be set out in the opinion.) In response to the Sheriff's questions, defendant stated he had stabbed Mrs. Ferebee twice in the chest, two times in the stomach and back, and that she was hurt bad. At this time, 2:45 a.m., defendant was taken to the county jail.

At approximately 3:00 a.m. the officers found Mrs. Ferebee's body about 200 yards from her home in a ditch by the side of the road. Medical evidence established that Mrs. Ferebee had been stabbed four times in the chest and abdomen and that the cause of death "was blood loss from the wound to the heart."

At approximately 5:25 a.m. SBI Agent Godley interviewed defendant at the jail. Again the court conducted a *voir dire* to determine the admissibility of defendant's statements. Agent Godley testified that he again advised defendant of his constitutional rights by reading the *Miranda* warning to him and explaining each right fully.

Agent Godley testified that defendant specifically stated that he was willing to make a statement and answer questions; that he did not want a lawyer at that time; and that he signed a waiver after inquiring the meaning of the word *coercion,* which was explained to him. The record does not reveal that this waiver was introduced in evidence. On the other hand, defendant testified on *voir dire* that he did not remember Agent Godley telling him he had the right to talk to an attorney before he was questioned or to have one with him during the questioning, and he did not understand he had these rights. Defendant also stated that he did not understand that an attorney would be appointed for him if he could not afford to hire one. He admitted he signed "a paper" but denied the authenticity of his purported signature on the "paper" which was shown to him. On this conflicting evidence, the court concluded that defendant's statements to Godley were admissible. (The court's findings will be set out in the opinion.)

Agent Godley asked defendant to relate the circumstances of Mrs. Ferebee's death, and he let him tell it in his own words. In essential part, defendant's statement is summarized as follows: He killed Mrs. Ferebee because "she had lied on him." She said he had assaulted her when he had not. "The bitch stayed at his home more than she did hers," and "she got the warrant because he was seeing another woman and she didn't like it." He stabbed her six or seven times in the chest, the stomach, and in the side, and "Hell, no!" he was not sorry he did it. He gained entry to deceased's house by kicking in the door. He kicked the door open "because she knew he was going to kill her." He had been planning to kill her ever since the day before when the assault warrant was served upon him. He put the kids in the kitchen and asked them if they could see their mother. When they said Yes, he told them to look because the next time they saw her she would be in her coffin. He stabbed her in the room next to the kitchen because he did not want the kids to see him stab her. When she fell on the couch he called the kids and told them to come and look at their

mother; that he wanted them to see her after she was hurt. After the kids came into the room and he started to leave, "he heard Doris Jean murmer, or gurgle" and he said to her, "ain't you dead yet, bitch?" She did not answer and he went home, where he remained until the officer came for him. The pocket-knife he gave to Deputy Perry was the knife with which he killed Doris Jean Ferebee.

Defendant also told Mr. Godley he had had some beer and smoked some marijuana, but he would have killed her even though he had not been drinking because he had it on his mind. Mr. Godley never detected the odor of alcohol about defendant and, in his opinion, he was not intoxicated at anytime he saw him.

At the conclusion of the State's evidence defendant moved for a directed verdict and, upon the court's denial of that motion, he elected to offer no evidence. The judge charged the jury, and thereafter it returned a verdict of guilty of murder in the first degree. From the sentence of death imposed upon the jury's verdict, defendant appealed directly to this Court as a matter of right.

*Attorney General Rufus L. Edmisten and Assistant Attorney General Charles J. Murray for the State.*

*W. T. Culpepper III for defendant appellant.*

SHARP, Chief Justice.

At the outset we consider and dispose of defendant's contention that the evidence of premeditation and deliberation was not "substantial enough" to warrant submitting the case to the jury on the charge of first degree murder. The assignment is feckless. The familiar rule is that a motion to nonsuit "requires the trial court to consider the evidence in its light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom." *State v. Goines,* 273 N.C. 509, 513, 160 S.E. 2d 469, 472 (1968). Furthermore, all admitted evidence which is favorable to the State, whether competent or incompetent, must be taken into account and so considered by the court when ruling upon the motion. *State v. Crump,* 277 N.C. 573, 178 S.E. 2d 366 (1971) ; *State v. Clyburn,* 273 N.C. 284, 159 S.E. 2d 868 (1968) ; *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967).

[1]  When tested by the foregoing rule, the testimony of Antionette Ferebee, an eyewitness; that of SBI Agent Godley, who related defendant's own account of the manner in which he killed Mrs. Ferebee and his reasons for killing her; and the testimony of the pathologist who described the stab wounds in the heart and abdomen which caused her death was superabundant to establish an unlawful killing done with premeditation, deliberation, and actual malice, and thus to sustain the verdict of murder in the first degree. *See State v. Van Landingham*, 283 N.C. 589, 197 S.E. 2d 539 (1973); *State v. Reams*, 277 N.C. 391, 178 S.E. 2d 65 (1970); *State v. Moore*, 275 N.C. 198, 166 S.E. 2d 652 (1969).

[2]  Notwithstanding, there must be a new trial because Judge Webb, without first finding that defendant had waived his right to the presence of counsel, admitted into evidence, over the objection of defendant, the testimony of Sheriff Toppin and SBI Agent Godley as to in-custody, inculpatory statements which defendant made in response to their interrogation.

As indicated in the preliminary statement of facts the trial court conducted *voir dire* hearings to determine whether defendant had been informed of his constitutional rights in accordance with *Miranda* and whether he had knowingly and voluntarily waived his right to counsel before making the challenged admissions. The testimony of both Sheriff Toppin and Agent Godley tended to show that each had explained to defendant in detail all his rights as defined in *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966). With reference to his right to counsel he was told "you have the right to talk to a lawyer before we ask you any questions, and to have him or someone else present during questioning. If you cannot afford to hire a lawyer, one will be appointed for you before any questioning if you wish one." He also was told that if he decided to answer any questions without a lawyer he had the right to stop answering them at any time. In response to each officer's inquiry defendant said he understood his rights and, "having these rights in mind," he wanted to answer their questions then without having a lawyer present.

As heretofore noted, however, on *voir dire*, defendant testified that neither Sheriff Toppin nor Agent Godley informed him of his right to the appointment of an attorney; that he did not understand he had the right to consult with an attorney either before or during police interrogation; and that he had

State v. Biggs

never agreed to answer any questions without the presence and advice of an attorney.

Upon this conflicting evidence the trial judge in each instance made only brief findings of fact. At the conclusion of the *voir dire* relative to defendant's statements to Sheriff Toppin, Judge Webb made the following entry: "Let the record show then that the court finds as a fact that after the voir dire hearing that Sheriff Troy Toppin, at the time when (sic) the arrest of the defendant, fully advised him of his right to remain silent, and of his right to have an attorney represent him, and of his right to stop answering questions at any time during the interrogation, and that the defendant freely, voluntarily, and understandingly waived his right to remain silent, and that any statements he made to Sheriff Toppin may be introduced in evidence in this case."

The judge's findings relative to defendant's confession made to Agent Godley are as follows: "Let the record show that at the end of the voir dire the court finds as a fact the SBI Agent William Godley fully informed defendant of his right to remain silent, of his right to have an attorney, and that any statements he made could and would be used against him; and that the defendant knowingly, understandingly and voluntarily waived his right to remain silent, and that any statements he made to Mr. Godley may be introduced in evidence in this case."

As defendant points out, it is obvious that in both post *voir dire* findings, the trial judge failed to find that defendant had affirmatively waived his right to counsel or to make any findings of fact with reference to waiver of counsel. Since the *voir dire* evidence concerning defendant's waiver of counsel was conflicting, defendant argues that the admission of the inculpatory in-custody statements without an express finding that defendant had knowingly and intelligently waived his right to counsel violated the holding of *Miranda v. Arizona, supra,* as that case has been interpreted and applied in *State v. White,* 288 N.C. 44, 215 S.E. 2d 557 (1975); *State v. Thacker,* 281 N.C. 447, 189 S.E. 2d 145 (1972); and *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971). We are constrained to agree.

In this jurisdiction, when a defendant challenges the admissibility of an in-custody confession, the trial judge must conduct a *voir dire* hearing to determine whether the confession

was voluntarily made and whether the requirements of the *Miranda* decision have been met. *See State v. Moore*, 275 N.C. 141, 166 S.E. 2d 53 (1969). When the trial judge concludes a *voir dire* hearing, the general rule is that he should make findings of fact to show the bases of his ruling. *See State v. Silver*, 286 N.C. 709, 213 S.E. 2d 247 (1975). However, when there is no conflict in the evidence on *voir dire*, we have held it is not error to admit a confession without making specific findings. Yet, at the same time, we have emphasized that it is always the better practice for the court to find the facts upon which the admissibility of the evidence depends. *State v. Whitley*, 288 N.C. 106, 215 S.E. 2d 568 (1975) ; *State v. Simmons*, 286 N.C. 681, 213 S.E. 2d 280 (1975) ; *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971).

When there is no conflict in the testimony the necessary findings are implied from the court's admission of the confession into evidence. However, when the *voir dire* evidence is conflicting and contradictory, it is incumbent upon the trial judge to weigh the credibility of the witnesses, resolve the crucial conflicts, and make appropriate findings of fact. *State v. Smith*, 278 N.C. 36, 178 S.E. 2d 597 (1970). Because of his superior opportunity to observe the demeanor of the witness and to ferret out the truth, the trial judge is given the responsibility for resolving the factual disputes which govern the admissibility of challenged evidence. For the same reason, the trial judge's findings are conclusive on appeal if they are supported by competent evidence. *State v. Smith, supra.*

In *State v. Blackmon, supra,* the defendant was convicted of murder, partially upon the basis of his in-custody confession. Upon the *voir dire* to determine the competency of the confession the evidence as to whether the defendant had intelligently waived his right to the presence of counsel was conflicting. The trial judge made no findings of fact in this regard; but he did find that the defendant had been given the full *Miranda* warnings, that he understood his rights, and that the defendant had not requested the presence of an attorney. In granting the defendant a new trial, this Court said: "Although the evidence at the voir ·dire is ample to support a finding that the defendant made the statements in question freely and voluntarily, having been fully advised of and having full understanding of his right to have an attorney present, the plain language of the *Miranda* decision . . . in addition requires a waiver of right to counsel

knowingly and intelligently made by defendant. ' . . . [F]ailure to ask for a lawyer does not constitute a waiver.' " *State v. Blackmon, supra* at 49-50, 185 S.E. 2d at 128.

Subsequent opinions of this Court make it clear when the State seeks to offer in evidence a defendant's in-custody statements, made in response to police interrogation and in the absence of counsel, the State must affirmatively show not only that the defendant was fully informed of his rights but also that he knowingly and intelligently waived his right to counsel. *State v. White,* 288 N.C. 44, 215 S.E. 2d 557 (1975) ; *State v. Thacker,* 281 N.C. 447, 189 S.E. 2d 145 (1972). When the *voir dire* evidence regarding waiver of counsel is in conflict, the trial judge *must* resolve the dispute and make an express finding as to whether the defendant waived his constitutional right to have an attorney present during questioning.

In the present case the police officers testified that defendant waived his right to presence of counsel. Defendant testified that he did not. Under these circumstances it was incumbent upon the judge to make an express finding in this regard, and his failure to do so rendered the admission of defendant's inculpatory statements to Sheriff Toppin and Agent Godley erroneous. *See State v. Hudson,* 281 N.C. 100, 187 S.E. 2d 756 (1972). Upon this record we cannot say that the error complained of was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967) ; *Fahy v. Connecticut,* 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963). Therefore, there must be a

New trial.