State v. Johnson

STATE OF NORTH CAROLINA v. JAMES RAY JOHNSON

No. 16

(Filed 12 January 1982)

1. **Criminal Law § 75— confessions—quantum of proof required to establish voluntariness—preponderance of the evidence**

The preponderance of the evidence test, specified in *Lego v. Twomey,* 404 U.S. 477, 30 L.Ed. 2d 618, 92 S.Ct. 619 (1972), is the appropriate standard to be applied by the trial courts in N.C. in determining the voluntariness of a confession under G.S. 15A-977.

2. **Constitutional Law § 46— denial of motion to replace attorney—no error**

The trial court did not err in failing, upon request, to discharge defendant's appointed counsel on grounds that, among others, his attorney refused to plead "not guilty by temporary insanity" rather than "not guilty" and because his attorney would not investigate defendant's contention that a possible dose of nuclear radiation made him commit a rape.

### 3. Rape § 1— pen as deadly weapon—sufficiency of evidence

From evidence that defendant jabbed the sharp end of a pen into the victim's neck; that the victim submitted to defendant because she was afraid he would injure her neck with the pen; and from its opportunity to examine a similar pen, the jury could legitimately find a pen was a dangerous or deadly weapon.

DEFENDANT appeals from judgment of *Strickland, J.,* 5 January 1981 Criminal Session, NEW HANOVER Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging him with the first degree rape of Erlinda Fields on 6 September 1980 in New Hanover County.

Prior to trial, defendant appeared before the court to request that his appointed attorney be discharged and another appointed to represent him. After examining defendant, his attorney, and allowing the assistant district attorney to be heard, the trial court denied defendant's motion.

A voir dire hearing was conducted regarding the admissibility of defendant's confession. Officer W. B. Prescott testified that he read a constitutional rights waiver form to defendant on 30 September 1980 at the Wilmington Police Department. According to Officer Prescott, defendant acknowledged that he understood his rights and signed the waiver form at 1:10 p.m. Officer W. A. Elledge testified that after defendant signed the form, the officers sent out for a hamburger and a drink for defendant. When defendant finished his meal, Officer Elledge began questioning him. Officer Elledge wrote defendant's replies on the rights waiver form. Defendant signed the statement upon completion of questioning. Both officers stated defendant never asked to see an attorney. Both officers testified that he did not appear to be intoxicated.

Defendant testified at the voir dire hearing that he had drunk a quart of Old English 800 and two tall cans of Strohs on 30 September 1980 before he was arrested. He was intoxicated and confused, having also smoked the "better part of a dime bag of reefer." Defendant stated that when Officer Prescott read him his rights and asked him if he wanted a lawyer, he said "yes." The officer then changed the subject by asking if defendant were hungry. According to defendant, the officers made it seem that if

he would talk, they would help get the charge reduced. This influenced him to make the statement.

The trial court made findings of fact and concluded that the motion to suppress should be denied. The court did not state that the findings were made "beyond a reasonable doubt."

The State's evidence at trial tended to show that Erlinda Fields was working at Malibu Apartments on 6 September 1980. Her duties involved showing apartments and performing secretarial work. At 1:30 in the afternoon of 6 September 1980 she was in the office alone.

While she was working at her desk, defendant came into the office. She asked him what type of apartment he wanted to rent, and he mumbled, "single." She gave him an application and pen, and he sat down on a couch in the office.

Instead of filling out the application, defendant kept staring at Mrs. Fields. She became uneasy and attempted to phone her husband. Her husband was not home, and she talked to her eleven-year-old daughter to stall for time.

When she hung up the phone, defendant locked the door and stepped around the counter toward Mrs. Fields. She told him to get out, that she was calling the police. He grabed her and jabbed the sharp end of a ballpoint pen into her neck. She screamed and he covered her mouth with his hand. He forced her to the floor and she dropped the telephone receiver. Defendant then engaged in sexual intercourse with Mrs. Fields by force and against her will.

Johnny Walker testified that he took defendant to Malibu Apartments on 6 September 1980 and waited in the car while defendant went in to apply for an apartment. Defendant came out of the apartment office twenty minutes later and told Walker that he had snatched his deposit money from the woman in the office. He said he had taken back more than he gave her.

Dr. Stephen Collins testified that he examined Erlinda Fields on 6 September 1980 and obtained a vaginal smear from her. Forensic serologist Jeb Taub stated that he found spermatozoa present in the vaginal smear.

The statement made by defendant to Officers Prescott and Elledge on 30 September 1980 was admitted into evidence. In that statement defendant admitted holding the pen to the victim's throat and having sex with her in the Malibu Apartments office on 6 September 1980.

The jury found defendant guilty of first degree rape, and he was sentenced to life imprisonment.

*Rufus L. Edmisten, Attorney General, by W. A. Raney, Jr., Special Deputy Attorney General, for the State.*

*Adam Stein, Appellate Defender, and Marc D. Towler, Assistant Appellate Defender, of Appellate Defender Project for North Carolina, for defendant appellant.*

HUSKINS, Justice.

[1] Defendant first assigns as error the denial of his motion to suppress his statement without finding beyond a reasonable doubt that the State had sustained its burden of proving that defendant's statement was voluntarily given.

The United States Constitution forbids the admission in a criminal trial of a confession coerced from a defendant. *Rogers v. Richmond*, 365 U.S. 534, 5 L.Ed. 2d 760, 81 S.Ct. 735 (1961). In North Carolina, the legislature has statutorily specified the procedures for determining whether a defendant's statements are voluntarily made. When the prosecution seeks to use a defendant's statement in his criminal trial, the defendant may challenge the admissibility of this evidence by a motion to suppress. G.S. 15A-972. The statement must be suppressed if its exclusion is required by the United States Constitution or the North Carolina Constitution, *i.e.*, if it was obtained by coercion. G.S. 15A-974. In determining the admissibility of the statement, the trial court must follow the procedures outlined in G.S. 15A-977. These include conducting a hearing, making findings of fact and conclusions of law, and setting forth in the record the findings and conclusions. G.S. 15A-977(d)(f). The findings of fact must include findings on the issue of voluntariness. *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907, 65 L.Ed. 2d 1137, 100 S:Ct. 3050 (1980). The State must affirmatively show that a defendant was fully informed of his rights and voluntarily waived them. *State v. Biggs*, 289 N.C. 522, 223 S.E. 2d 371 (1976).

The quantum of proof required to establish the voluntariness of a statement is not specified in G.S. 15A-977 and has never been articulated by this Court. Defendant urges the adoption of a requirement that the State prove beyond a reasonable doubt that a defendant's statement was voluntarily given.

Defendant's argument was considered and rejected by the United States Supreme Court in *Lego v. Twomey,* 404 U.S. 477, 30 L.Ed. 2d 618, 92 S.Ct. 619 (1972). The Court there held that the United States Constitution requires a showing of voluntariness by a *preponderance of the evidence.* The decision left the states free, however, to adopt a higher standard pursuant to their own laws.

Several states have adopted the reasonable doubt standard. *See People v. Jimenez,* 21 Cal. 3d 595, 147 Cal. Rptr. 172, 580 P. 2d 672 (1978); *Magley v. State,* 263 Ind. 618, 335 N.E. 2d 811 (1975); *State v. Johnson,* 327 So. 2d 388 (La. 1976); *State v. Tardiff,* 374 A. 2d 598 (Me. 1977); *Younger v. State,* 301 So. 2d 300 (Miss. 1974); *State v. Phinney,* 117 N.H. 145, 370 A. 2d 1153 (1977); *State v. Whittington,* 142 N.J. Super. 45, 359 A. 2d 881 (App. Div. 1976); *People v. Brown,* 44 A.D. 2d 769, 354 N.Y.S. 2d 263 (1974); *State v. Aschmeller,* 87 S.D. 367, 209 N.W. 2d 369 (1973); *Valerio v. State,* 494 S.W. 2d 892 (Tex. Crim. App. 1973); *Blaszke v. State,* 69 Wis. 2d 81, 230 N.W. 2d 133 (1975). One jurisdiction has adopted an intermediate "clear and convincing evidence" test. *State v. Bello,* --- R.I. ---, 417 A. 2d 902 (1980). The majority of jurisdictions considering the question have adhered to the preponderance test set out in *Lego. See Thomas v. State,* 393 So. 2d 504 (Ala. Ct. App. 1981); *McMahan v. State,* 617 P. 2d 494 (Alaska 1980); *State v. Osbond,* 128 Ariz. 76, 623 P. 2d 1232 (1981); *Harris v. State,* 271 Ark. 568, 609 S.W. 2d 48 (1980); *People v. Fordyce,* --- Colo. ---, 612 P. 2d 1131 (1980); *State v. Hawthorne,* 176 Conn. 367, 407 A. 2d 1001 (1978); *Mealey v. State,* 347 A. 2d 651 (Del. Super. 1975); *Finley v. State,* 378 So. 2d 842 (Fla. Dist. Ct. App. 1979); *Gates v. State,* 244 Ga. 587, 261 S.E. 2d 349 (1979), *cert. denied,* 445 U.S. 938, 63 L.Ed. 2d 772, 100 S.Ct. 1332 (1980); *People v. Cozzi,* 93 Ill. App. 3d 94, 416 N.E. 2d 1192 (1981); *State v. Jacoby,* 260 N.W. 2d 828 (Iowa 1977); *State v. Stephenson,* 217 Kan. 169, 535 P. 2d 940 (1975); *Tabor v. Commonwealth,* 613 S.W. 2d 133 (Ky. 1981); *State v. Kidd,* 281 Md. 32, 375 A. 2d 1105, *cert. denied,* 434 U.S. 1002, 54 L.Ed. 2d 498, 98 S.Ct. 646 (1977); *State v. Young,* 610 S.W. 2d 8 (Mo. App. 1980); *State v. Davison,* --- Mont. ---, 614 P. 2d 489

(1980); *Commonwealth v. Farrington*, 270 Pa. Super. Ct. 400, 411 A. 2d 780 (1979); *State v. Smith*, 268 S.C. 349, 234 S.E. 2d 19 (1977); *Griffin v. State*, 604 S.W. 2d 40 (Tenn. 1980); *State v. Breznick*, 134 Vt. 261, 356 A. 2d 540 (1976); *Griggs v. Commonwealth*, 220 Va. 46, 255 S.E. 2d 475 (1979); *State v. Braun*, 82 Wash. 2d 157, 509 P. 2d 742 (1973); *State v. Milam*, --- W.Va. ---, 260 S.E. 2d 295 (1979); *Raigosa v. State*, 562 P. 2d 1009 (Wyo. 1977).

For the reasons enunciated in *Lego*, we adopt the preponderance test as the appropriate standard to be applied by trial courts in North Carolina. In *Lego*, the Court first noted that the due process requirement prohibiting admission of coerced confessions does not depend upon the truth or falsity of the confessions. 404 U.S. at 483-84, 30 L.Ed. 2d at 624, 92 S.Ct. at 624. "The use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles. *Rogers v. Richmond*, 365 U.S. 534, 540-41, 5 L.Ed. 2d 760, 766, 81 S.Ct. 735, 739 (1961)." *Id.* at 485, 30 L.Ed. 2d at 625, 92 S.Ct. at 624-25. The purpose that a voluntariness hearing is designed to serve is to prevent the use of unconstitutional methods in obtaining confessions and "has nothing whatever to do with improving the reliability of jury verdicts"; therefore the Court reasoned that judging the admissibility of a confession by a preponderance of the evidence does not undermine the holding of *In re Winship*, 397 U.S. 358, 25 L.Ed. 2d 368, 90 S.Ct. 1068 (1970). *Id.* at 486, 30 L.Ed. 2d at 626, 92 S.Ct. at 625. The Court ruled in *Winship* that an accused may be convicted only upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged. 397 U.S. at 364, 25 L.Ed. 2d at 375, 90 S.Ct. at 1073. The petitioner in *Lego* did not contend that either his confession or its voluntariness was an element of the crime charged. Therefore, his rights under *Winship* were not violated.

No provision in the North Carolina Constitution expressly or implicitly requires this Court to adopt a higher quantum of proof than that required by the United States Supreme Court in its interpretation of the United States Constitution. Defendant has failed to show that the rights of an accused are not adequately protected by the United States Constitution. We therefore decline to interpret the North Carolina Constitution to require proof of voluntariness beyond a reasonable doubt. *Cf. State v. Felmet*, 302 N.C. 173, 273 S.E. 2d 708 (1981) (refusing to interpret Article I,

section 14 of the North Carolina Constitution to protect conduct not protected by the First Amendment to the United States Constitution).

The recognition that the burden of proof required under G.S. 15A-977 must comport with the *Lego* mandate of proof by a preponderance of the evidence does not affect our decision in *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied*, 448 U.S. 907, 65 L.Ed. 2d 1137, 100 S.Ct. 3050 (1980), or in *State v. Biggs*, 289 N.C. 522, 223 S.E. 2d 371 (1976). Those cases correctly hold that facts found by the trial court in a G.S. 15A-977 hearing are conclusive if supported by competent evidence. 298 N.C. at 339, 259 S.E. 2d at 535; 289 N.C. at 530, 223 S.E. 2d at 376. The standard to be applied by *appellate courts* in reviewing the findings of a trial court is not affected by the standard of proof for the trial court to use in making the findings.

[2] Defendant's second assignment of error stems from the denial of his motion to replace his appointed attorney. In a hearing the morning of defendant's trial, he requested the court to discharge his appointed counsel, Mr. Jay Hockenbury. Defendant was allowed to address the court and stated that he was dissatisfied with Mr. Hockenbury's representation because "He has entered 'Not Guilty' and I want it 'Not Guilty by Temporary Insanity.'" Defendant listed as further reasons for dissatisfaction:

> Well, first and foremost would be, you know, is the fact of this being an unprovoked attack on an innocent victim, and second it was, you know, a thing about the judge involved at the time this incident occurred, and what effect that would have on this crime being committed, and you know, third, well it's—well, I have a list but I didn't bring it with me, you know, things that I wanted him to do, and stuff, but I thought it was going to be handled, you know. Other than this I wasn't prepared to come up here and remember it word for word. However, basically, you know, those are the important things.

Mr. Hockenbury stated that he began practicing law in 1972 and had been trying capital cases since 1973. He had initiated and completed discovery proceedings on behalf of the defendant and had carefully explained all aspects of the case to the defendant. Defendant had not agreed with the attorney's recommendations.

Mr. Hockenbury acknowledged he had failed to investigate defendant's contention that he possibly received a dose of nuclear radiation at the Southport Carolina Power and Light Plant which made him commit the rape.

The court entered findings of fact and concluded that Mr. Hockenbury was capable of representing defendant and had handled his case with due diligence. The court thereupon denied defendant's motion.

The case of *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977), is dispositive of this assignment. In *Gray*, the defendant moved to dismiss his attorney because he had urged Gray to plead guilty to one of the crimes with which he was charged. Gray also complained that his attorney had "misled" him and "put distrust" in his witnesses' hearts. Defendant's final objection was that his appointed counsel was a former assistant district attorney.

This Court held that defendant's complaints were insufficient to require dismissal of his attorney:

> It is clear that defendant had no reasonable objection to his attorney's conduct or preparation of his case. His complaints are general and vague, and the emphasis of his objections shifted during the hearing. His counsel, as appears from the record, was well qualified and did, in fact, represent defendant in an exemplary fashion. Defendant's assertion that he wished to employ his own counsel, made as it was, on the day trial was to begin and without the appearance or even the name of a single attorney who might be privately employed to represent him, was no ground for the dismissal of his court-appointed counsel.

292 N.C. at 281, 233 S.E. 2d at 913. The similarities between *Gray* and this case are compelling. Both involved rather vague, general complaints. Although each case included a disagreement over the appropriate plea, in neither situation was the dispute so severe as to prejudice the presentation of a defense. In *Gray*, defendant in fact pleaded not guilty to all crimes, although his attorney encouraged him to plead guilty to first degree burglary. In this case, defendant pleaded not guilty, although he argued to his attorney that he should plead not guilty by temporary insanity. Defendant never attempted to change his plea, however. While

State v. Johnson

the failure of counsel to enter the plea desired by his client may be a more fundamental conflict than a mere disagreement over trial tactics, defendant has failed to demonstrate that he in fact seriously desired a plea different from the plea entered.

The true nature of defendant's dissatisfaction with his counsel is best evidenced by his request that his appointed attorney investigate whether defendant had received a dose of nuclear radiation which made him commit the rape. No counsel, appointed or privately employed, is required to pursue every absurd suggestion advanced by his client.

Defendant's unreasonable demands indicate there is little reason to believe he would have been satisfied by any appointed lawyer. "The constitutional right of an indigent defendant in a criminal action to have the effective assistance of competent counsel . . . does not include the right to insist that competent counsel . . . be removed and replaced with other counsel merely because the defendant has become dissatisfied with his services." *State v. Robinson*, 290 N.C. 56, 65-66, 224 S.E. 2d 174, 179 (1976).

[3] Defendant's third assignment of error is that there was insufficient evidence that a dangerous or deadly weapon was employed or displayed. The evidence shows defendant jabbed the sharp end of a ballpoint pen into the neck of the victim. A similar pen was introduced into evidence. From the victim's testimony that she submitted to defendant because she was afraid he would injure her neck with the pen, and from its opportunity to examine a similar pen and consider the manner of its use, the jury could legitimately find that the pen was a dangerous or deadly weapon. The question was properly submitted to the jury.

Defendant's final assignment of error is that the trial court's instructions implied that the jury was required to return a verdict. Defendant argues that the trial court must inform the jury that a mistrial will be declared if the jury cannot reach a unanimous decision. Such is not the law. The assignment is meritless.

Our review of the record impels the conclusion that defendant has had a fair trial free from prejudicial error. The verdict and judgment must therefore be upheld.

No error.