STATE OF NORTH CAROLINA v. JEROME H. LOUCHHEIM III

No. 7710SC909

(Filed 16 May 1978)

1. Searches and Seizures § 19— motion to suppress—affidavit for warrant—cred-
ibility of informant—accuracy of information

   Where a search warrant was valid on its face and an SBI agent's affidavit
   was sufficient to establish probable cause for issuance of the warrant, defend-
   ant could not attack the credibility of the confidential informant referred to in
   the affidavit or the accuracy of the information obtained by the SBI agent in
   the hearing on motion to suppress evidence seized pursuant to the warrant.

2. Searches and Seizures § 24— probable cause for warrant—business records—
elapse of 14 months since informant saw records

   An officer's affidavit to obtain a warrant to search for business records
   did not fail to show probable cause because some 14 months had elapsed since
   the officer's informant had seen the records in defendant's office since such
   records are usually kept for years, and the office in which the records were
   kept by defendant 14 months previously was still in the possession of defend-
   ant.

3. Searches and Seizures § 31— search warrant—items to be seized—incorpora-
tion of application by reference

   A search warrant sufficiently specified the items to be seized where it
   referred to the property described in the application, and the application
   described the items as corporate minutes, bank statements, checks, sales in-
   voices and journals, ledgers, correspondence, contracts, and the books and
   documents relating to a State advertising contract; furthermore, the cir-
   cumstances required that officers executing the warrant inspect certain in-
   nocuous records and documents in order to locate the ones which tended to
   show the suspected criminal activity.

4. Evidence § 28.1; Criminal Law § 15— motion to dismiss for improper venue—
consideration of affidavit

   The trial court did not err in considering an affidavit on a motion to
   dismiss for improper venue on grounds the affidavit was hearsay and violated
   defendant's right of confrontation since the use of affidavits in determining
   preliminary and interlocutory motions is proper, and the right of confrontation
   applies only to the trial of the offense charged and not to a hearing incidental
   to the trial.

5. Criminal Law § 15— proper venue—sufficiency of evidence

   In a prosecution for conspiracy to commit false pretense and false
   pretense in overbilling for State advertising work, the State carried its burden
   of proving that Wake County was the proper venue where it presented
   evidence that the State made payment under the advertising contract to
   defendant in his office in Raleigh; defendant prepared and submitted invoices
   to the State; defendant's place of business for purposes of the State contract

was in Raleigh; and defendant and another worked together in Raleigh on the State contract.

6. **Criminal Law §§ 77.1, 79; Conspiracy § 5.1— conversations heard by witness— admission by defendant — declarations of coconspirator**

In this prosecution for conspiracy to commit false pretense and false pretense in overbilling the State for advertising work, the trial court properly admitted a witness's testimony concerning a conversation in her presence and telephone conversations which she heard between defendant and the coconspirator in which defendant and the coconspirator discussed how they were going to mark up the amounts of the bills submitted to the State since (1) statements by defendant amounted to an admission which was admissible against him although not made in furtherance of the conspiracy, and (2) statements made by the coconspirator, even if descriptive of the conspiracy, were made while the conspiracy was in existence and in furtherance of it and thus were admissible against defendant and did not violate defendant's right of confrontation.

7. **Criminal Law § 56— expert in accounting—examination of seized books and records—comparison of cost figures**

In this prosecution for conspiracy to commit false pretense and false pretense in overbilling the State for advertising work, the evidence on voir dire supported the court's finding that an employee of the office of the State Auditor was an expert in accounting and auditing, and the court properly allowed the witness to compare actual advertising production costs and the inflated costs submitted in invoices to the State based on his examination of the books and records seized from defendant's office.

8. **Conspiracy § 6; False Pretense § 3.1— overbilling State for advertising—conspiracy and false pretense**

The State's evidence was sufficient for the jury in a prosecution for conspiracy to commit false pretense and false pretense in overbilling the State for advertising work.

9. **Corporations § 8; Criminal Law § 9; False Pretense § 1— overbilling of State by corporation's president—criminal liability of corporation and its president**

Where the president of a corporation in the course of the corporation's business overbilled the State for advertising work done by the corporation, both the corporation and the president could be convicted of false pretense.

APPEAL by defendant from *Braswell, Judge.* Judgments entered 10 June 1977, in Superior Court, WAKE County. Heard in the Court of Appeals 2 March 1978.

Defendant plead not guilty to indictments as follows: (1) 76CR29772, charging conspiracy with Harry Julian Eng and others during the period from 1 June 1973 to 28 June 1975 to commit felonious false pretense by submitting false billings to the

State; (2) 76CR29773, charging false pretense on 22 August 1973 by falsely representing to the State advertising production costs in the sum of $38,254.98, which was $374.78 more than actual costs; (3) 76CR29774, charging false pretense on 10 October 1973 by falsely representing to the State advertising production costs in the sum of $11,198.68, which was $628.12 more than actual costs; (4) 76CR29775, charging false pretense on 4 December 1973 by falsely representing to the State advertising production costs in the sum of $24,972.94, which was $239.00 more than actual costs; and (5) 76CR29776, charging false pretense on 11 January 1974 by falsely representing to the State advertising production costs in the sum of $23,410.45, which was $370.00 more than actual costs.

The evidence for the State tended to show that in 1970 defendant opened an advertising agency in Florida. In 1971 he came to North Carolina and worked as a consultant in the gubernatorial campaign of James E. Holshouser. After Holshouser's election, defendant, in 1972, formed Capital Communications, Inc. (hereafter C.C.I.) in anticipation of doing advertising business in this State. In May 1973 he was informed that he had the State advertising contract. Under the contract in general defendant received a commission of 15% on all advertising production work. He associated Julian Eng, a commercial artist with his own agency in Florida, to do production work on the North Carolina contract when needed. They had known each other for several years. Defendant agreed to pay Eng an "agency fee" of $1,500 per month.

Defendant signed three ad contracts with the State, each for one year, beginning 1 July 1973, the first two for C.C.I. In April 1975 defendant and Eng reorganized their agencies into Louchheim, Eng & People, Inc., and the third contract was awarded to this corporation. The contract was for State advertising costing about $400,000 to $500,000 annually. Defendant's agency was to be compensated for actual sums paid to others for production work or the prevailing rates for this type of work, whichever is lower, plus his commission.

A State audit in March 1975 revealed overbillings amounting to about $10,970 for the period from 1 July 1973 to 31 December 1974. This sum was paid by C.C.I. A second audit in February

1976 revealed overbilling of $2,916, which was paid by C.C.I. The State Auditor found the books and records of C.C.I. to be disorganized.

State's witness Toni Brennan, who worked for Mr. Eng in Florida, testified that in early 1974 defendant handed her some invoices in Eng's office and asked her to type up bills from Eng to match the C.C.I. bills to the State so that he would have them if the auditors came over. In October 1974 she left Eng and came to work for defendant in Raleigh, where she continued to type Eng's invoices as directed by defendant, who told her he was upping the bills so that he could make some money and make up for Mr. Eng's agency fee of $1,500 a month. She heard defendant and Eng state that any time you had a government contract you had to milk it for all it's worth. She heard them talk about marking up the bills. She placed the inflated invoices in a file folder in the front office; the original "true billings" from Eng to defendant she placed in a file folder entitled "Real" and gave it to defendant.

On 25 May 1976, a search warrant was issued for search of the offices of C.C.I. and Louchheim, Eng & People, Inc. for books, checks, and other records of these corporations relating to the State advertising contract. The search warrant was based on the application and affidavit of Curtis L. Ellis, S.B.I. Agent, averring that he was informed by a reliable confidential informant that defendant kept two different sets of invoices, one set with inflated and inaccurate production costs that were submitted to the State for payment; that after the false and inflated invoices were submitted to the State, defendant prepared a separate set of invoices prepared on Eng's letterheads reflecting the false and inflated production costs.

A search was made and records seized on 25 May 1976.

Defendant moved to quash the search warrant and suppress the evidence. The hearing on this motion was held on 15 July 1976. After hearing evidence offered by defendant and the State, the court found that the search warrant was validly issued, and that the search and seizure was reasonable in scope and did not violate the Fourth Amendment. The motion to suppress was denied.

Donnie W. Wheeler, a Supervisor in the office of the State Auditor, examined the books and records seized from defendant's office pursuant to the search warrant. He testified that he found records revealing that actual advertising production costs, evidenced by Eng agency bills to defendant paid by checks, had been increased by defendant in submitting invoices to the State for payment as alleged in the indictments.

Defendant offered the testimony of several employees, including his wife, who was a bookkeeper for C.C.I., which tended to show that defendant operated an efficient advertising agency, that he was honest and had a good reputation.

Defendant's testimony tended to show that in the early 1960's he began public relations and advertising work in Florida, subsequently joined the campaign staff of a gubernatorial candidate, was appointed Commissioner of Hotels and Restaurants of Florida in 1968, and opened his own advertising agency in 1970. In 1971 he spent three or four days in North Carolina working as a consultant in the Holshouser campaign. In 1972 he formed C.C.I. in this State in anticipation of doing advertising business here. He was awarded the State advertising contract in May, 1973. He had known Julian Eng for 12 years. Eng was a commercial artist and had the State of Florida advertising account. Defendant agreed to pay Eng 5% of the gross for production work. Eng was paid $1,500 monthly, and an adjustment was made at the end of the year.

Eng submitted a bill once a month for production work; defendant would then bill the State. Some of the invoices relied on by the State were "working copies" which were subsequently increased when he or Eng received new information from suppliers. He never told Toni Brennan he was going to "up" the bills to the State, and he never asked her to type up a whole set of invoices for the State auditors. He submitted no false invoices to the State, but there were some errors in billings.

The jury returned verdicts of guilty as charged. From judgment imposing an active prison term of four years and judgment of five years in prison suspended for five years upon good behavior and restitution payment of $1,611.90 to the State, defendant appeals.

*Attorney General Edmisten by Assistant Attorney General Charles M. Hensey and Associate Attorneys Christopher Prather and Robert Newsom III for the State.*

*Akins, Harrell, Mann & Pike by Bernard A. Harrell; Ragsdale, Liggett & Cheshire by Joseph B. Cheshire V, and Peter M. Foley for defendant appellant.*

CLARK, Judge.

The defendant brings forward in his brief, consisting of 76 pages, eight assignments of error in seven arguments. Their voluminosity demands that we treat each of them, albeit briefly.

First, defendant contends the trial court erred in denying his motion to suppress the evidence seized pursuant to an invalid search warrant because the supporting affidavit of Curtis Ellis (a) fails to show that the confidential informant was reliable as to the information, (b) fails to show probable cause in that the information of the informant was 14 months old, (c) is defective in that the information allegedly obtained from Judith Justice was inaccurate and false, and (d) is defective in that the search warrant did not specify the items to be seized.

In *State v. Harris*, 25 N.C. App. 404, 213 S.E. 2d 414, *app. dis.* 287 N.C. 666, 216 S.E. 2d 909 (1975), and *State v. Brannon*, 25 N.C. App. 635, 214 S.E. 2d 213, *cert. den.* 287 N.C. 665, 216 S.E. 2d 908 (1975), this Court imposed a limitation on the possible scope of challenging the search warrant's validity by attacking the affidavit upon which its issuance was based. In these cases the court decided that when the search warrant is valid on its face and the sworn allegations are sufficient to establish probable cause, a defendant may not attack the validity of the allegations or the credibility of the affiant or his informant in the *voir dire* hearing on the defendant's motion to suppress the evidence seized by law enforcement officers. The United States Supreme Court has never ruled directly on this issue, although it is arguable that such attack in the *voir dire* is consistent with the policy of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961), which made the exclusionary rule a requirement of the Fourth Amendment. We note, however, that some members of the Supreme Court are backing off from the exclusionary rule as set out in *Mapp.* See Chief Justice Burger's dissent in *Bivins v. Six*

*Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed. 2d 619 (1971), and Justice Harlan's dissent in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564, *reh. den.* 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed. 2d 120 (1971). And the Burger court has refused to extend the rule to any situation. *See United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed. 2d 561 (1973), holding that the exclusionary rule does not apply to evidence introduced before grand juries; *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed. 2d 887, *reh. den.* 377 U.S. 940, 84 S.Ct. 1330, 12 L.Ed. 2d 303 (1964), holding that errors did not invalidate the search warrant because they were not material to the finding of probable cause; *United States v. Janis*, 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed. 2d 1046 (1976), holding that evidence illegally seized by state officers may be used in a federal civil proceeding; *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed. 2d 1067 (1976), holding that a state prisoner may not be granted habeas corpus relief in federal courts upon the ground that evidence obtained in an unconstitutional search was introduced at his trial, if he had an opportunity for a full and fair litigation of the Fourth Amendment claim; and *United States v. Ceccolini*, --- U.S. ---, 98 S.Ct. ---, 55 L.Ed. 2d 268 (21 March 1978), which qualified the "fruit of the poisonous tree" doctrine of *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed. 2d 441 (1963), by holding admissible the voluntary testimony of an eyewitness (respondent's employee) concerning the ownership of certain policy slips, which testimony resulted from the discovery by a police officer of the betting slips during an illegal search of respondent's flower shop.

[1] We find that the search warrant is valid on its face, that the affidavit of Curtis Ellis, S.B.I. Agent, contained facts and circumstances within his knowledge, and of which he had reasonably trustworthy information, and presented sufficient justification for probable cause for issuance of the search warrant. *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed. 2d 1040 (1967). We decline to consider the attack upon the credibility of the confidential informant referred to in the Ellis affidavit or the credibility of the information obtained by Judith G. Justice in view of the rule adopted in this court by the *Harris* and *Brannon* cases, *supra*.

[2] The defendant contends that a lapse of some 14 months since the informant had seen the business records of the defendant was such a lapse of time that there could be no probable cause to believe that the records sought were present in the place to be searched. The defendant relies on *State v. Campbell*, 14 N.C. App. 493, 188 S.E. 2d 560 (1972), cases collected in 100 A.L.R. 2d 525, and various decisions of the Federal Courts of Appeal. In *Campbell* the item sought in the search was a narcotic drug. In the other cases relied on, the items sought were likely to be consumed, sold or otherwise removed within a relatively short period. In the case *sub judice*, the items sought in the search warrant were business records, records that were required to be kept in compliance with the State advertising contract. Such records are usually kept for years, and the office in which they were kept by the defendant 14 months ago was still in the possession of the defendant. There were reasonable grounds to believe that he retained the records in his office. In *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed. 2d 627 (1976), the items sought were business records, and the court held that a lapse of three months was reasonable and supported the finding of probable cause.

[3] Nor do we find merit in defendant's claim that the search warrant did not specify in sufficient detail the items sought. The search warrant referred to the property described in the application. Such incorporation by reference was approved in *State v. Flowers*, 12 N.C. App. 487, 183 S.E. 2d 820, *cert. den.* 279 N.C. 728, 184 S.E. 2d 885 (1971). The items described in the application were "corporate minutes, bank state. . . .s [statements] and checks, sales invoices and journals, ledgers, correspondence, contracts, . . .ices, [invoices] and other books and documents kept in the course of business by Louchheim, . . ." The State was seeking evidence of fraudulent overcharges by defendant in invoices to the State under the advertising contract. The investigation involved a complex *modus operandi* involving business records other than the invoices submitted by defendant to the State. The list of documents in the search warrant included only the records relating to the State advertising contract. We find the items to be seized were sufficiently designated in the warrant. And we find, further, that the circumstances required that the officers executing the search warrant inspect certain innocuous records and documents in order to locate and seize the ones which tended to

show the suspected criminal activity. In *Andresen v. Maryland*, *supra*, the court recognized that investigators conducting the search will exercise some judgment and "discretion" in separating the innocuous from the incriminating. The scope of the search and seizure was reasonably limited in the search warrant and did not violate G.S. 15A-253.

We conclude that the trial court properly denied the defendant's motion to quash the evidence seized under the search warrant.

[4] In the hearing on defendant's motion to dismiss for improper venue, the trial court, over defendant's objection, received in evidence and considered the affidavit of Charles R. Lassiter III. The defendant contends that the court erred because the affidavit (1) was hearsay and (2) violated his right of confrontation.

Upon a motion to dismiss for improper venue the State has the burden to go forward and produce evidence to show venue properly lies in the county of indictment. *State v. Miller*, 288 N.C. 582, 220 S.E. 2d 326 (1975).

The use of affidavits in determining preliminary and interlocutory motions are considered proper, irrespective of the vital influence the decision on the motion may have upon the outcome of the action. *In re Custody of Griffin*, 6 N.C. App. 375, 170 S.E. 2d 84 (1969); 3 Am. Jur. 2d, Affidavits, § 28, pp. 403-404. We note that defendant did not request the right to subpoena the affiant and confront him by cross-examination.

The right of confrontation under the Sixth Amendment is applicable only to the trial for an offense charged and not for hearing or inquiries incidental to the trial. 21 Am. Jur. 2d Criminal Law, § 337, pp. 364-365.

We find no merit in this assignment of error.

[5] Nor do we find merit in defendant's contention that the State failed in its burden of proving that Wake County was the proper venue. The State had the burden of showing that the offenses charged, or any act or omission constituting part of the offense, occurred in Wake County. *State v. Miller, supra; State v. Jarrette*, 284 N.C. 625, 202 S.E. 2d 721 (1974). Where conspiracy is charged, the proper venue is the county where the conspiracy

was entered into or in which any overt act was committed by any of the conspirators in furtherance of the common design. *State v. Goldberg*, 261 N.C. 181, 134 S.E. 2d 334 (1964); *State v. Hicks*, 233 N.C. 511, 64 S.E. 2d 871 (1951).

The evidence at the venue hearing established that the State made payment under the advertising contract to defendant at his office in Raleigh, that defendant prepared and submitted invoices to the State, that defendant admitted that his place of business for purposes of the State contract was in Raleigh, and that defendant and Eng worked together in Raleigh on the State contract.

The question of venue is not an issue after the jury has been empaneled. *State v. Dozier*, 277 N.C. 615, 178 S.E. 2d 412 (1971); *State v. Puryear*, 30 N.C. App. 719, 228 S.E. 2d 536, *app. dis.* 291 N.C. 325, 230 S.E. 2d 678 (1976). But it was not incumbent upon the State at the venue hearing to produce evidence of the crime itself; it had the burden of showing that *if* a crime was committed, venue properly lay in Wake County. We find that the State carried its burden and the evidence fully supported the denial of defendant's venue motion.

[6] Defendant assigns as error the admission of the testimony of Toni Brennan, a witness for the State, about a discussion in her presence between defendant and Eng in which it was said "that any time you had a government account you have to milk it for all it's worth and that's when you make all the money you can while you've got it. . . . I heard them discuss on more than one occasion how much more they were going to mark it up when they sent it to the State." Too, Ms. Brennan testified that while working for Eng in Miami she would get on a telephone during conversation between defendant and Eng about "how they were going to mark up the bill after Mr. Eng had already made his bill."

The record on appeal reveals that before the foregoing testimony was admitted a *voir dire* examination of the witness was conducted, and the witness was cross-examined by defendant. The record does not include any part of the examination or findings and conclusions of the trial court. However, it does appear elsewhere in the record that Ms. Brennan began working for Eng in Miami in June 1973, that defendant came to the Eng office there in the summer of 1974 and had her type some "inflated"

bills from Eng to C.C.I. to match the bills the defendant had actually billed the State. These bills were more than the "true billings" previously submitted by Eng to defendant. She testified also that some of Eng's bills to defendant also had inflated costs. The record on appeal does not disclose the time of the challenged conference or telephone conversations.

It is an established rule of law in North Carolina, in a majority of the other states, and in the Federal Courts, that the declarations and acts of any one of the co-conspirators made or done while the conspiracy is in existence, and in furtherance of the common design, are admissible against the other conspirators. *U.S. v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed. 2d 1039 (1974); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed. 2d 213 (1970); *State v. Conrad*, 275 N.C. 342, 168 S.E. 2d 39 (1969); *State v. Sanders*, 276 N.C. 598, 174 S.E. 2d 487 (1970); *State v. Puryear*, *supra*.

But defendant contends that at the time the statements were made a conspiracy was not in existence, and that the statements were not in furtherance of any conspiracy but merely descriptive of a conspiracy.

The defendant relies on *Dutton v. Evans*, *supra*, to support his Sixth Amendment right of confrontation argument. In *Dutton*, the defendant Evans was tried in a Georgia state court for the murder of three police officers. A cell mate of one of his codefendants testified that when the codefendant returned from his arraignment, he stated, ". . . if it hadn't been for that dirty son-of-a-bitch, Alex Evans, we wouldn't be in this now." The statement was admitted under the Georgia co-conspirator exception to the hearsay rule. The United States Supreme Court in substance stated that the right to confrontation was violated by the introduction of a co-conspirator's hearsay statements, but found the statement was neither "crucial" to the prosecution nor "devastating" to defendant. The court did not find reversible error because there were many witnesses for the prosecution, including an eyewitness to the crime, who were subjected to full and effective cross-examination, and the questioned statement was "of peripheral significance at most."

The defendant refers to several federal cases for support of his claim that defendant was denied the right to confront Eng, and that Eng's availability as a defense witness was not sufficient to meet his constitutional right of confrontation.

Neither *Dutton* nor the other federal cases relied on by defendant support his position in the case *sub judice* for several reasons. First, it appears that the challenged statements were made subsequent to the conspiracy agreement. There is no direct evidence of this agreement, but the only reasonable inference from the circumstantial evidence is that the agreement was made by the time of the effective date of the State advertising contract on 1 July 1973. The statements were, as defendant argues, descriptive of a conspiracy, but they were descriptive of an existing conspiracy. Too, it does not appear from Ms. Brennan's testimony about the conference and telephone conversation who said what, but it is clear that each agreed with the other, which constituted an admission by the defendant. Any declaration by the defendant amounting to an admission on his part is admissible against him, although not made in furtherance of the conspiracy. *State v. Turner*, 119 N.C. 841, 25 S.E. 810 (1896), 39 N.C.L.R. 422 (1961).

Further, if it is conceded that some part of the challenged statements was made by Eng and was descriptive of the conspiracy, it was made also in furtherance of it, and therefore within the established rule of law which recognizes the admissibility of the declaration of a co-conspirator made while the conspiracy is in existence and in furtherance of the common design.

[7] The defendant assigns as error (1) the finding by the court that the witness Donnie Wheeler, employee of the Office of the State Auditor, was an expert in the field of accounting and auditing, (2) allowing him to compare figures on various exhibits, and (3) permitting him to use and explain State's Exhibit 45, a comparison of the amounts billed by Eng to defendant with the amounts defendant billed to and paid by the State.

The trial court found that in light of the complex nature of the case, with many records, figures and dates, the assistance of an expert would be valuable to the jury in understanding the evidence. After *voir dire*, the court found Wheeler to be an expert in the field of accounting. The finding was fully supported by the evidence. When material to the inquiry, an expert witness in the field of accounting may testify as to entries made in the books of a business and their meaning. *Bank v. Crowder*, 194 N.C. 331,

139 S.E. 604 (1927); *State v. Hightower*, 187 N.C. 300, 121 S.E. 616 (1924).

As an expert accountant, Wheeler's testimony in comparing figures on various exhibits and in showing and explaining the comparison figures was admissible. An expert accountant may give an opinion or conclusion if it is properly based on his personal examination of the records. *State v. Hightower, supra.* In *Teer Co. v. Dickerson, Inc.*, 257 N.C. 522, 126 S.E. 2d 500 (1962), Justice Sharp (now Chief Justice), for the Court wrote:

> "Entries in the books of the defendant were clearly admissible against it as admissions. Stansbury on Evidence, Section 156. It was permissible for the auditor, an expert accountant, to interpret the books and testify what the books showed; he did not purport to say what amount was, in fact, due. Whether the books were correct or not, in the absence of a stipulation, was, of course, for the jury. In *LaVecchia v. Land Bank*, 218 N.C. 35, 41, 9 S.E. 2d 489, an expert accountant, after examining the books of a corporation, testified that they did not indicate that the corporation was indebted to its president in any amount. The court said: 'The witness being an expert accountant, his testimony, based upon personal examination of the books and records of the corporation, is clearly competent.' " 257 N.C. at 529, 126 S.E. 2d at 505.

The trial court did not err in finding Wheeler to be an expert in the field of accounting or in admitting his opinion testimony. These assignments of error are without merit.

[8, 9]  Finally, defendant's motions for nonsuit were properly overruled. The State offered evidence that there was a conspiracy between Eng and defendant to submit false billings to the State, and that the bills submitted by defendant to the State were inflated and false as charged. The evidence supports the charges and was sufficient to overcome the nonsuit motion. Nor is it a defense that the false representations were made by Capital Communications, Inc., and not the defendant. He was president of the corporation and its agent. 3 Strong's, N.C. Index 3d, Corporations, § 8, pp. 485-486. Where the agent of a corporation in the course of his and his employer's business obtains anything of value for the corporation by false pretense both the corporation and the agent

may be convicted. *State v. Ice Co.*, 166 N.C. 366, 81 S.E. 737 (1914).

We conclude that the defendant had a fair trial free from prejudicial error.

No error.

Judges MORRIS and ARNOLD concur.