**UNITED STATES of America**

v.

**George C. SHEARER, Defendant.**

**Crim. No. 87–40.**

United States District Court,
W.D. Pennsylvania.

June 24, 1987.

Wayne DeLuca, Pittsburgh, Pa., for plaintiff.

Sandra Jordan, Asst. U.S. Atty., for defendant.

## OPINION AND ORDER

SIMMONS, District Judge.

Defendant, George C. Shearer has been charged with four counts of bankruptcy fraud relating to his business Air Parcel Delivery Service, Inc. (APDS). APDS filed for bankruptcy on November 13, 1983, at Bankruptcy No. 83–2429, in the Western District of Pennsylvania. Count One charges the making of a false oath on the petition; Count Two charges that the defendant transferred assets (money) of the corporation in the contemplation of the bankruptcy; and Counts Three and Four charge that the defendant transferred two vehicles of the corporation in contemplation of bankruptcy, allegedly all in violation of Title 18, United States Code, Section 152.

In the course of investigating this matter, special agent, Yvonne Schweyen, on October 30, 1984, applied to a United States Magistrate of the Western District of Pennsylvania for a search warrant for the purpose of searching the offices of Total Transportation Corporation (TTC) at 429–431 Moon Clinton Road, Coraopolis, Pennsylvania 15108, to obtain evidence of the commission of federal crimes, namely, bankruptcy fraud. The evidence that was sought by the proposed search was the business records of the two corporations, APDS and TTC for the years 1978–1983.

Supporting the application for said search warrant was the affidavit of Ms. Schweyen, indicating that she had reason to believe that said business records were concealed at the above address and that said Defendant, George C. Shearer, fraudulently filed for bankruptcy and concealed assets from his creditors by transferring them from APDS to TTC in violation of Title 18, United States Code, Section 152. (See Government Hearing Exhibit 4, Schweyen Affidavit)

The Magistrate, on October 30, 1984, after considering the Schweyen search warrant affidavit was satisfied that there was probable cause to believe that the property described in the search warrant application was being concealed on the premises and that the said property described was relevant to the investigation of the possible commission of federal crimes, and thereupon he issued the search warrant. (See Government Hearing Exhibit 3)

The search was conducted at the described premises on October 31, 1984, and the evidentiary items taken from Defendant, George Shearer's Personnel Office and from other offices and storage areas are itemized on Government's Hearing Exhibit 2. See also Government's Hearing Exhibit 1 for a layout of the TTC office space in question.

In due time Defendant Shearer was indicted on the four criminal counts heretofore mentioned and within the proper time allowed by law, the Defendant's attorney moved to suppress the above described evidence seized in the course of said search.

█ Defendant's first briefed contention in support of his motion to suppress said evidence is that the information supplied to the government agent by the three informants who were ex-employees of Defendant's companies was stale. That the three informing employees were last in the subject premises in January of 1984, and the search warrant affidavit was not executed until October 30, 1984, ten months after the last employee was on the premises.

This argument of Defendant is not pursuasive in this case. APDS had filed for bankruptcy on November 13, 1983. The three informing employees were in the building in question in January of 1984, after the date of the bankruptcy filing of APDS and had personal knowledge of the existence of the subject books and records as of that time (January 1984). The bankruptcy matter involving APDS was an ongoing and open matter in the United States Bankruptcy Court before January of 1984, and after the search of the subject premises on October 31, 1984.

The allegations of the affiant special agent were that the business of APDS had been fraudulently transferred to and was "consumed" by TTC, a viable business still operating. The criminal bankruptcy law requires a business which has filed bankruptcy to maintain its records until the conclusion of the bankruptcy case. 18 U.S.C. § 152 ("Whoever after filing [for bankruptcy], conceals, destroys, mutilates, falsifies or makes a false entry in any document ... [or] withholds from ... an officer of the court ... any recorded information, including books, documents, records, and papers relating to the property or financial affairs of a debtor," shall have committed an offense.) It is clear that Defendant was bound by law to maintain his records until his bankruptcy proceeding was concluded. The affiant could reasonably expect and presume Defendant's compliance with the bankruptcy law. This factor, alone, defeats defendant's legal challenge of the warrant based on a "staleness" argument.

In this case, the character of the crime (bankruptcy fraud), the character of the things to be seized (corporate records required to be maintained because of the pending bankruptcy and normally maintained in any event), and the nature of the place to be searched (a business office containing the relevant corporate records), all compel the conclusion that the factual information supporting a finding of probable cause was not stale.

See *State v. Louchheim,* 36 N.C.App. 271, 244 S.Ed.2d 195 (1978), *cert. denied,* 444 U.S. 836, 100 S.Ct. 71, 62 L.Ed.2d 47, where the search was upheld even where there was a fourteen month delay between the date the factual information was given to the agents and the date of the search. Similarly, compliance with state law in the *Louchheim* case required the records of state advertising contracts to be maintained for several years. Moreover, the court noted in the *Louchheim* case that "such [business] records are usually kept for years." *Id.* 244 S.E.2d at 200.

Defendant's next basis for his attack on the search warrant affidavit is that it sim-

ply does not contain sufficient reasonably trustworthy facts and circumstances to support a finding of probable cause and that said affidavit contains a material misstatement of fact.

The controlling appellate case for guidance in these search warrant matters is *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), wherein the Supreme Court rejected the rigid two-pronged approach set forth in *Aguillar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Instead the Supreme Court outlined a more reasonable, commonsense approach to the question of determining probable cause. Although the defendant, in his brief, vainly attempts to pick apart the affidavit item-by-item, this hypertechnical analysis is precisely what was rejected by the Supreme Court in *Gates*.

*Gates* overruled years of precedent and held that the task of the issuing Magistrate is to make a practical, commonsense decision whether, reading the affidavit as a whole, there is a fair probability that the evidence of a crime will be found in a particular place to be searched. The duty of the reviewing court is simply to ensure that the Magistrate had a substantial basis for the conclusion that probable cause existed for the issuance of the search warrant. Specifically, if the Magistrate has some doubt concerning the informant's credibility, an explicit and detailed description of the wrongdoing which was observed first-hand by witnesses, and corroborated by court documents, as was this situation, entitled the information given to the Magistrate in this matter to a greater weight than might otherwise be the case. Thus, the test is a more fluid "totality of circumstances" analysis. The Supreme Court in *Gates* specifically rejected a rigorous inquiry into each of the prongs of the *Aguillar-Spinelli* doctrine.

█ When the *Gates'* test is applied to the affidavit of this case, it is very clear that when reading the subject affidavit as a whole (Government Exhibit 4) one would believe that there was a fair probability that evidence of the alleged crimes in question would be found in the business records of APDS and TTC situated in and about the premises described in the search warrant. It is not open to question and in fact, axiomatic that the corporate books and records of the affected business entities alleged to be involved in bankruptcy fraud would be of necessity relevant in proving the elements of such a crime in a court of law.

Defendant in his next attack on the legal efficacy of the affidavit to the search warrant application, claims that said warrant is invalid because paragraph 29 of the same contains a material misstatement of fact that renders said warrant invalid.

At pages seven, eight, nine and ten of Defendant's brief the following is stated:

"Paragraph 29: Alleged statement of defendant to one of the former employees/informant that certain vehicles were sold to Total Transportation so as not to be included in the bankruptcy petition. A review of the bankruptcy petition indicates that those vehicles were in fact included as assets in the petition (see argument below re: material misstatement);" (Pages 7 and 8)

Defendant's brief goes on to state: (Page 9 and 10)

"A search warrant may be invalidated because of inaccuracies in the supporting affidavit. In *Franks v. Delaware*, 438 U.S. 154, [98 S.Ct. 2674, 57 L.Ed.2d 667] (1978), the Supreme Court identified the circumstances that mandate an evidentiary hearing once a defendant challenges the veracity of statements contained in the supporting affidavit. *Franks* entitles a defendant to an evidentiary hearing when a showing is made that the statement was deliberately false or demonstrates reckless disregard for the truth and that the challenged statement is essential to the Magistrate's finding of probable cause."

Defendant's brief continues,

"In this case, the material misstatement is in the nature of a glaring omis-

sion. In paragraph 29 of the supporting affidavit, the affiant relates information that Lawrence Sargus provided. Specifically, Sargus allegedly said that the defendant told him not to include certain assets in the bankruptcy petition, namely, trucks which were sold to Total Transportation Corporation. In fact, a review of the bankruptcy petition which is filed of record and made part of the proceedings herein, reveals those assets *were* included in the bankruptcy petition in the Addendum to Section 14B of the bankruptcy petition.

(See attachment hereto). Such a misstatement is clearly a deliberate misstatement by the affiant or, at the very least, made by the affiant with reckless disregard for the truth when the very subject of the alleged criminality is the allegations in the bankruptcy petition and the affiant had reviewed that petition during the investigation."

A close reading of section "14b" of the bankruptcy petition (Court Exhibit "A"); together with paragraphs 27, 28, 29, 31, 32, 33, 34, 35 and 36 of the search warrant application affidavit (Government Exhibit 4) and Counts 3 and 4 of the indictment indicate that there is *not* a deliberate misstatement in the affidavit to the search warrant application of any kind whatsoever, and in fact, the Attorney for the Defendant is making a deliberate misstatement of fact in his brief when he suggests that the vehicles referred to in the search warrant application affidavit and, by implication the vehicles referred to in the indictment, were in fact included by Defendant as assets in the bankruptcy petition prior to the filing of the same. (Court Exhibit 1)

A copy of the relevant Addendum to the bankruptcy petition, "14b, Transfers of Property" is set forth as follows:

14b. Transfers of Property

| PROPERTY | DATE OF TRANSFER AND TRANSFEREE | RELATIVE OR INSIDER | CONSIDERATION | DISPOSITION |
|---|---|---|---|---|
| 1. One (1) vehicle | Date: Over 1 year ago, James Grassinger | No | Take over payments | N/A |
| 2. One (1) vehicle | Date: Over 1 year ago, Duffy Truck Sales | No | Take over payments | N/A |
| 3. One (1) vehicle | Date: Over 1 year ago, Total Transportation Corp. | No, however, president of debtor is shareholder of transferee Corp. | Take over payments | N/A |

A copy of the above-referred to relevant paragraphs of the search warrant application are set forth as follows:

"27. In June, 1979, Grassinger was rehired by George C. Shearer at APDS as a truck driver where he worked until February 13, 1983".

"28. Sargus, the former Controller of TTC, advised that George C. Shearer contracted with Sargus in approximately May of 1983, for Sargus to draft the bankruptcy petition on behalf of APDS which was filed on November 13, 1983".

"29. In drafting the petition, Sargus questioned the existence of certain assets, specifically trucks owned by APDS. George C. Shearer advised that the assets including the trucks had been sold to TTC through a third party and were "arms length" transactions, and were not to be included in the bankruptcy petition".

"31. Grassinger, a former truck driver of APDS, advised that in his experience as a driver for APDS, subsequent to the formation of TTC, he would make pickups and deliveries for TTC while employed by APDS".

"32. Grassinger advised that the truck which he was driving for APDS was titled to APDS but was insured both by APDS and TTC".

"33. Grassinger advised that APDS and TTC are exactly the same company; the only thing that changed was the name".

"34. Stadelman, former Operations Manager of APDS and TTC, advised he knew that George C. Shearer sold a 1980 or 1981 Ford Courier Pick-up Truck titled to APDS to Crivelli's Chevrolet, Vanport, Pennsylvania, in February of 1983. George C. Shearer then purchased a 1983 Chevy Van with the proceeds which was titled to TTC".

"35. Stadelman advised that George C. Shearer told him that he, Shearer, traded in a Ford F-700 box truck to APDS for $1,800.00, towards a new Mercedes Truck titled to TTC. Shearer then purchased back the Ford F-700 box truck for $1,800.00 titled to TTC. This occurred around April, 1983".

"36. Sargus advised that George C. Shearer maintained corporate records of APDS and TTC on the second floor and in first floor furnace room of 429-431 Moon Clinton Road, as indicated on the attached Exhibits C and D incorporated herein which are the first and second floorplans of 429-431 Moon Clinton Road".

A copy of Counts Three and Four of the indictment are set forth as follows:

### Count Three

"On or about May 6, 1983, in Pittsburgh, in the Western District of Pennsylvania, the defendant, George Shearer, in contemplation of a bankruptcy proceeding on behalf of the corporation, Air Parcel Delivery Service, Inc., at Case No. 83-2429, filed in the United States Bankruptcy Court for the Western District of Pennsylvania, did wilfully, knowingly, fraudulently and with intent to defeat the bankruptcy law, transfer the property of the corporation, to-wit, a 1979 Ford LN 700 Truck, Vehicle Identification Number N70BVEG5230, from Air Parcel Delivery Service, Inc., to Total Transportation Corporation, a company owned by the defendant, George C. Shearer.

### Count Four

"On or about May 10, 1983, in Pittsburgh, in the Western District of Pennsylvania, the defendant, George C. Shearer, in contemplation of a bankruptcy proceeding on behalf of the corporation, Air Parcel Delivery Service, Inc., at Case No. 83-2429, filed in the United States Bankruptcy Court for the Western District of Pennsylvania, did wilfully, knowingly, fraudulently and with intent to defeat the bankruptcy law, transfer the property of the corporation, to-wit, a 1981 Ford Courier Pick-up truck, vehicle identification number JC2UH1223BG504296, from Air Parcel Delivery Service, Inc. to Total Transportation Corporation, a company owned by the defendant, George C. Shearer."

It is undisputed that the bankruptcy petition was filed on November 13, 1983.

The "14(b)—Transfer of Property" set forth in the bankruptcy petition (Court Exhibit "A") as accurately set forth and copied above in this Opinion) clearly refers to three vehicles, all three of which were transferred by the bankrupt over one year prior to the November 13, 1983 filing of the petition in bankruptcy, (i.e. one year prior to November 13, 1983, which date would be prior to November 13, 1982).

Therefore, the search warrant application affidavit clearly refers to the transfer of vehicles which are entirely different and unlike those vehicles listed on said Schedule "14(b)", namely, a Ford Courier Pick-up Truck which allegedly was transferred by the bankrupt, APDS, in February of 1983, clearly at a time less than one year before November 13, 1983, the filing date of the APDS petition in bankruptcy; (see paragraph 34 of said search warrant affidavit

set forth above) and a Ford 700 Box Truck which allegedly was transferred by the bankrupt, APDS, in April of 1983, also clearly at a time less than one year before the filing of the APDS petition in bankruptcy, (see paragraph 34 of said search warrant affidavit set forth above).

Further, although the time of the alleged fraudulent transfer of the Ford Courier Truck was changed from February 1983 (as set out in the search warrant affidavit paragraph 34, see above) to a date on or about May 10, 1983, as set forth in Count Four of the Indictment, (Count Four is set out in full above), the search warrant affidavit, the books and records seized and the indictment refer with sufficient particularity to the same truck which allegedly was fraudulently transferred by the defendant within one year of the filing of the APDS petition in bankruptcy.

Contrary to the contention of the defendant in his brief, this Ford Courier Truck clearly is *not* one of the vehicles described in the bankruptcy petition, "14(b), Transfers of Property", wherein all of said "14(b)" lists vehicles, unlike said Ford Courier which were allegedly transferred more than one year prior to the filing of the APDS bankruptcy petition, (i.e. prior to November 13, 1982).

Likewise, although the time of the alleged fraudulent transfer of the Ford F–700 was changed from April 1983, (as set out in the search warrant affidavit paragraph 35, see above) to a date on or about May 6, 1983, as set forth in Count Three of the indictment, (Count Three is set out in full above) the search warrant affidavit, the books and records seized and the indictment refer with sufficient particularity to the same truck which allegedly was fraudulently transferred by the defendant within one year of the filing of the APDS petition in bankruptcy (Court Exhibit "A").

Contrary to the contention of the defendant in his brief, this Ford F–700 clearly is *not* one of the vehicles described in the APDS bankruptcy petition, "14(b), Transfers of Property", wherein all of said "14(b)" listed vehicles unlike said Ford F–700 which were allegedly transferred more than one year prior to the filing of the APDS bankruptcy petition, (i.e. prior to November 13, 1982).

It is true that the person and/or persons who furnished information to the affiant special agent for the search warrant affidavit as to the two vehicles mentioned in Count Three and Four of the indictment made some unimportant mistakes in describing said vehicles and the informants were also mistaken as to the exact time the vehicles were fraudulently transferred. These mistakes were not material and the information furnished to the agent was very accurate in describing all of the essential elements and credible facts necessary for the magistrate to make an informed decision that there was probable cause to issue the search warrant in question.

In the case of *Illinois v. Gates*, 462 U.S. 213, 246, 103 S.Ct. 2317, 2336, 76 L.Ed.2d 527 (1983) the Supreme Court in retreating from the strict bounds of Spinelli says, "probable cause does not demand the certainty we associate with formal trials". In fact, the *Gates* case held that even a "material mistake" in the statement of an informant to the affiant will not legally void the entire statement of said informant. [See footnote "14(21b)" of the *Gates* case at page 246 of the majority opinion].

Defendant next attacks the legal sufficiency of paragraph 30 of the search warrant affidavit and describes said paragraph 30 as "simply a conclusionary statement without factual support."

Paragraph 30 reads as follows:

"30. George C. Shearer told Sargus not to include certain accounts receivable owed to APDS by TTC and others totalling at least $30,000.00. As a result these accounts receivable were not listed as assets of APDS."

Contrary to the suggestion of the defendant in his brief, this alleged statement of the defendant himself which was made to an informant, is *not* conclusory but is in fact a very damaging admission of defendant against his penal interest. Paragraph 30 specifically sets forth that admittedly, the defendant *personally* directed his Con-

troller, Sargus, also the informant, to prepare a fraudulent bankruptcy petition by omitting approximately $30,000.00 in accounts receivable assets. The bankruptcy petition lists accounts receivable (Schedule B–2 Court Exhibit "A") at only $475.88, (also see paragraph 15 of search warrant application affidavit). Again, it is clear that paragraph 30 of such search warrant application is *not* at all conclusory, but was grounded upon the informant's knowledge of relevant facts.

Defendant next claims that this warrant was general in nature and that the executing officers had total discretion to decide what to seize, and so the alleged general nature of the search warrant caused said search to be fatally flawed.

In *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) a search warrant for documents withstood challenge even where it contained the clause, "together with other fruits, instrumentalities and evidence of crime at this [time] unknown." The Court in Andresen interpreted the warrant to be sufficiently particular since the phrase was read as authorizing a search for the seizure of evidence relating to the crime alleged.

Here in the case at bar, the agents were directed to specific business records located at the described premises which demonstrated the inter-relationship between the two corporations, APDS and TTC. The records were identified by type and by year. As the agent testified at the time of the pre-trial suppression hearing, not all of the business records were taken and the searching agents seized only the categories of documents listed and described in the warrant. Moreover, as the search warrant return form demonstrates, the items taken were consistent with the items enumerated on the face of the warrant. The search warrant in this case was lawful and indeed very specific in describing the things to be seized and said warrant was *not* as claimed by the defendant, a boundless general warrant issued contrary to law.

Defendant's final challenge to the legality of the search warrant is that the searching agents exceeded the scope of the warrant and conducted a general search. The evidence submitted at the suppression hearing clearly indicated that the agents limited their search and seizure to the items described and enumerated in the warrant.

Defendant complains that certain tax returns were illegally seized. However, said tax returns which were seized were listed on the warrant. Defendant also complains that insurance policies were seized. However, such policies are some of the records reflecting the purchase and sale of the bankrupt's assets and these records were also referred to on the face of the warrant. Also, the question as to the legality of the seizure of certain business records dated in 1984, was addressed at the suppression hearing. According to the suppression hearing testimony, since there was a "time" overlap as to the relevancy of certain records and where the corporation maintained records dated in 1984, which related to 1983 activities, the items were seized. It is clear judging from the totality of the circumstances, that this seizure in the case at bar was lawful in every regard and was well within the scope of the affidavit affixed to the search warrant application.

Without doubt in this case the United States Magistrate in view of the totality of the circumstances, had a substantial factual basis (as the same was set forth in the search warrant application affidavit) to form a reasonable conclusion that probable cause existed for the issuance of the search warrant in question and probable cause existed also for the execution of the subsequent search. All records seized on October 31, 1984, from the premises of APDS/TTC were seized lawfully and are therefore admissible at trial if they are not objectionable on other evidentiary grounds.

An appropriate Order shall be entered.

## ORDER OF COURT

AND NOW, this 24th day of June, 1987, the Motion of the Defendant to Suppress the evidence obtained by the execution of

the search warrant issued in the above captioned case is hereby DENIED.